Commonwealth *v.* Polite, Appellant.

330

Argued June 12, 1959. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*Harry R. Back,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY RHODES, P. J., September 16, 1959:

The defendant, Rose Polite, was tried by a judge without a jury and convicted on an indictment charging her with setting up and being concerned in the conduct and carrying on of an illegal lottery; with having in her possession a lottery numbers ticket or writing; and with unlawfully selling lottery numbers tickets or writings. She was sentenced to a term of not less than three months and not more than six months in the Philadelphia County Prison.

This appeal is from the judgment of sentence and concerns the nature and sufficiency of the evidence to sustain the conviction.

The evidence viewed consistent with and favorable to the verdict established the following facts and circumstances. On May 20, 1958, the police found defendant in a luncheonette which was being investigated for numbers activity because of a complaint. Defendant was briefly questioned and then, with another occupant of the luncheonette, was taken in a police car from the luncheonette to police headquarters for further investigation. During the ride defendant and the other occupant were seated in the back seat of the police car. The front seat was occupied by the driver and by a police officer, Bresnahan, who was observing the occupants in the rear seat. During the course of the ride Bresnahan saw the defendant slip something shiny between the curved part of the rear seat and the back of the rear seat. He evidenced no immediate reaction, but when the passengers were discharged at the police station he lifted the seat and found a piece of tin foil in which was wrapped a sheet of paper, torn on one edge and upon which numbers were written, together with two one-dollar bills and two fifty-cent pieces. When confronted with this evidence, defendant denied slipping the paper between the seat, stated that she had "nothing to hide," and suggested that the police search her

home. That invitation was accepted. In the home of the defendant, the police found a piece of paper with a torn edge which matched the paper found in the police car. In addition to the matching edge, both pieces of paper had mimeographing of the same type on the reverse side and both were of the same texture and contained the date of May 16th.

As the court below concluded: "It was thus clear that the paper found in the defendant's home and the paper found in the tin foil had been one and the same sheet before being torn." Defendant's denial of having slipped the tin foil, paper, and money behind the seat of the police car is thus contradicted by the evidence.

The numbers written upon the paper secreted by defendant were of the type normally used in the numbers racket. There were twenty-three groups of numbers, each consisting of three digits, a dash, then two digits, i.e., "000-15." The first three numbers commonly represent the play; the next two numbers the amount.

Officer Bresnahan, who had considerable experience in the investigation and arrest in numbers cases, stated that, while the slip of paper had nothing on it to identify the players and nothing to show repeat numbers or the date of the play, it was nevertheless the type of slip that would ordinarily be found in the numbers game; numbers writers use a variety of forms and sheets of paper. Bresnahan further testified that the list of numbers appearing on the slip of paper was of the type used in the numbers game, and, in view of the number of plays appearing on this slip, it was his opinion that this was a writer's slip rather than a player's slip. He admitted that a writer must keep track of the players involved, but stated that a writer with a steady "play" knows the players from memory, particularly where a small operation is involved. Recent experience and knowledge of the numbers racket as it was currently being operated indicated to him that triplicate

copies for the player, the writer, and the banker were rarely used today.

The Act of Assembly of June 24, 1939, P. L. 872, §601, 18 PS §4601, provides in part: "Whoever, either publicly or privately, erects, sets up, opens, makes or draws any lottery, or is in any way concerned in the managing, conducting or carrying on the same, is guilty of a misdemeanor, . . ." Being "concerned in" the managing, conducting, or carrying on of the lottery has been defined to be "being substantially engaged in or taking part in." *Com. v. Paul*, 177 Pa. Superior Ct. 289, 294, 111 A. 2d 374, 376.

Defendant contends that it was not shown that she was "substantially engaged" in the conduct of the lottery because there was no evidence of the existence of additional paraphernalia indicating or suggesting unmistakably and definitely her implication in the carrying on or management of the numbers game. In substance, defendant contends that the evidence was not of the nature and volume to sustain her conviction. It has been held that the evidence necessary to secure a conviction for conducting a lottery or selling tickets does not have to be as full or comprehensive as for maintaining a gambling house. *Com. v. Mattera*, 151 Pa. Superior Ct. 135, 137, 30 A. 2d 168. It is sufficient if there is evidence relating to the particular defendant which is peculiar to a lottery. *Com. v. Moore*, 180 Pa. Superior Ct. 538, 541, 118 A. 2d 212. The evidence in this case, while not showing additional paraphernalia or equipment peculiar to a lottery, did establish that defendant, when apprehended, had in her possession a writer's slip containing approximately twenty-three numbers played together with three dollars in cash, all of which she attempted to conceal after arrest. That the slip of paper upon which the numbers were written was a number writer's slip is indicated by the nature of the numbers thereon and the amount of numbers

played. We also notice that on the lower right-hand corner of this slip of paper appears the writing "$4.00." If the second set of digits in each series of numbers is considered the amount of the play expressed in cents, they total four dollars, the amount written at the bottom and to the right of the column. There can be no other logical conclusion then that this slip of paper represented a record of a numbers writer, and that defendant was the writer. That defendant was a writer rather than a player is corroborated by the fact that currency was found in the package which contained the slip, and the fact that the defendant attempted to conceal the evidence.

Defendant contends that under the principle of *Com. v. Saeli,* 146 Pa. Superior Ct. 555, 22 A. 2d 597, the mere possession of a slip of paper containing numbers peculiar to the numbers game is insufficient to support a conviction. In the *Saeli* case, the defendant was convicted of selling lottery tickets. The only incriminating evidence against him was a slip of paper with numbers written on it. On appeal to this Court the conviction was reversed since the slip of paper might have indicated that he was a player who had purchased the numbers written thereon; there was no evidence that he had sold the numbers. Under the statute, section 602 of the Act of June 24, 1939, P. L. 872, 18 PS §4602, a numbers player is not liable to prosecution or penalty. The distinguishing feature of the *Saeli* case is that the conviction was on the charge of selling numbers, not including as here the charge of being concerned in a lottery. The slip of paper in the *Saeli* case was consistent with that which would be held by a player; the slip of paper in this case is indicative of that held by a writer. Such distinction was drawn in *Com. v. Mattera,* supra, 151 Pa. Superior Ct. 135, 137, 30 A. 2d 168, where the conviction of a banker in the numbers racket was sustained upon evidence similar to that in the in-

stant case. The fact that the money was associated with the numbers slip in the package which defendant attempted to conceal is indicative of her role as a numbers writer. If defendant were a player desirous of concealing that fact, notwithstanding that she could not be convicted as a player, she would ordinarily not have attempted to conceal the money associated with the plays. What defendant attempted to conceal was not merely a numbers slip but rather the package containing her business records and receipts on this occasion. In short, there were additional facts and circumstances present here which were not present in the *Saeli* case. The holding of the *Saeli* case is not applicable.

The evidence is sufficient to sustain the conviction of being concerned in the managing, conducting, or carrying on of a lottery; the judgment of sentence is therefore sustained on that charge. *Com. ex rel. Tyson v. Day,* 181 Pa. Superior Ct. 259, 262, 263, 124 A. 2d 426.

Judgment of sentence is affirmed; and it is ordered that defendant appear in the court below at such time as she may there be called, and that she be by that court committed until she has complied with the sentence, or any part thereof which had not been performed at the time the appeal was made a supersedeas.