Commonwealth *v.* Calvarese, Appellant.

320

Argued September 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Charles L. Guerin, Jr.,* for appellant.

*Burton Satzberg,* Assistant District Attorney, with him *Arlen Specter,* Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., November 15, 1962:

Three police officers, who had received information that the appellant was engaged in the operation of an

illegal lottery, went to the vicinity of the Daily News Building, at 23rd and Arch Streets in Philadelphia, at 11:20 a.m. on October 25, 1960. They observed the appellant enter the building, whereupon two officers took a position by the entrance of the building and a third officer positioned himself near the appellant's car. The appellant came out of the building approximately 15 minutes after he entered and was, at this time, stopped by the two officers, who were in plain clothes. After the police identified themselves the appellant, without saying a word, ran toward his car but the third officer stopped him before he got there. The appellant fell to the sidewalk and one of the police officers testified that he feigned unconsciousness. He was then helped to his car, which was located on the opposite side of the street. The police officers then patted him down to make sure he had no weapons. Two of the officers got in the car with the appellant and proceeded to the Ninth District Police headquarters. The third officer followed in another car.

After the car had arrived at the district parking lot, the appellant, who was sitting between the two officers, took something from his mouth and dropped it to the floor of the car. One of the officers retrieved it from the floor and it proved to be "two slips of paper rolled in tiny cylinder form." The slips of paper contained 387 straight and boxed numbers plays and repeats. Two of the officers testified that the slips of paper were picked up from the floor of the car after appellant had dropped them.

The appellant testified that when they got to the parking lot they got out of the car and started toward the police station and he then said: "As I turned around, I saw him [an officer] stooping to the ground and pick something up. He said, 'Here it is.'" The appellant denied that he had ever seen these two papers before and denied all connection with them.

The defendant waived a jury trial and was tried by the court below sitting without a jury. At the trial the slips were introduced into evidence against the defendant, over his objection, and formed the basis on which he was found guilty. After overruling the defendant's demurrer, the court below imposed sentence. This appeal was then taken.

The only error alleged on this appeal is the admission of the two slips of paper, it being argued that they were illegally seized without a warrant.

The term "search" as applied to searches and seizures is an examination of a man's house, buildings or of his person, with a view to the discovery of contraband or some evidence of guilt to be used in the prosecution of a criminal action: 79 C.J.S., Searches and Seizures, §1, page 775.

A seizure contemplates a forcible dispossession of the owner and is not a voluntary surrender: *People v. Defore,* 242 N. Y. 13, 150 N.E. 585.

In *Haerr v. United States,* 240 F. 2d 533, a case factually similar to the instant case, federal officers were questioning occupants of an automobile and observed the defendant trying to hide boxes and then observed him throw the boxes from the automobile. The officers picked up the boxes and found marihuana, and the Court found that there was no search and seizure. It is generally held that the mere looking at that which is open to view is not a search: *United States v. Lee,* 274 U. S. 559; *Ellison v. United States,* 206 F. 2d 476. In the *Ellison* case, at page 478, the Court said: "If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him."

If we take the police officers' testimony in the present case, we must conclude that they merely picked up the two slips of paper which the appellant took from his mouth and either placed or dropped from his mouth to the floor of the car. They were not making a search of the car or of the appellant at the time. They had good reason to believe that the two slips of paper were involved in numbers writing. They did what any sensible police officer would do under the circumstances when they retrieved this evidence, which the appellant was undoubtedly attempting to get rid of. If we believe the appellant's version, then the police officers merely picked up the two slips of paper from the surface of the parking lot. The appellant denied all connection with these two slips of paper. No search or seizure was being made at the time this evidence was obtained. It was lying on the surface of the parking lot, according to the appellant's version, when the officers obtained the evidence.

We are clearly of the opinion that no search or seizure was actually being made by the officers at the time when this evidence was obtained. They were merely retrieving something which was in open view and which they had good reason to believe would constitute evidence.

A police officer may make an arrest for a misdemeanor committed in his presence (the possession of numbers paraphernalia) without a warrant: *United States v. Murphy,* 290 F. 2d 573, 575. In that case the Court said: "The Court made it clear in Carroll v. United States, 1925, 267 U. S. 132, 156-157, 45 S. Ct. 280, 69 L. Ed. 543, that an officer can make an arrest without first securing a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence. Probable cause does not require, as the Supreme Court has so frequently said, that the arresting officers have evidence to establish

criminal guilt. Brinegar v. United States, 1949, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. On the other hand, a mere inkling or suspicion is not enough. United States v. Walker, 7 Cir., 1957, 246 F. 2d 519. 'Probable cause,' Justice DOUGLAS said in Henry v. United States, 1959, 361 U. S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134, 'exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."

Turning to the evidence in the present case, we are convinced that the arresting officers knew and saw enough at the time of taking this appellant into custody, to permit them, as prudent men, to believe that a misdemeanor was being committed in their presence. They had information that this appellant was writing numbers and that he would visit a certain building in that connection at a certain hour. They placed themselves there and saw him arrive and enter the building. They saw him come out of the building approximately 15 minutes later, when they endeavored to stop him. As soon as he learned they were officers he tried to run away. We have said many times that mere flight is evidence of guilt. They caught him and placed him in his automobile and took him to the parking lot adjacent to the police station. He then endeavored to get rid of the evidence, which he took from his mouth and placed on the floor of the car. As prudent men, they had good reason to believe that this was material evidence. They then retrieved it from the floor of the car. They would have had a right to make a search of the appellant's person and of his car at that point without a warrant. It was a reasonable conclusion that a misdemeanor was then and there being committed in their presence. As an incidence to that valid arrest the officers also had the right to make a reasonable search and seizure: *United States v. Rabinowitz,* 70 S. Ct. 430, 339 U. S. 56. Even if we consider what was done

here to be a search and seizure, in our opinion it was reasonable, under all the circumstances.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot agree that appellant was lawfully arrested. He did nothing except enter a building and depart from it fifteen minutes later. For this he was stopped, and bodily carried away by the police officers to the police station where he was charged with a misdemeanor. This certainly constitutes an arrest and being for a misdemeanor—lottery—the only justification for it was that it was committed in the presence of the officers. *Commonwealth v. Rubin,* 82 Pa. Superior Ct. 315. However, at the time of the arrest the officers saw nothing in the actions of appellant to constitute the commission of a crime; nothing, apparent, in his possession indicated the commission of a crime. Mere suspicion of the commission of a misdemeanor is not enough to justify an arrest without a warrant. 3 P.L.E., Arrest, §4.

Further, I cannot subscribe to the other theory, relied on by the majority, that the evidence was found exposed and therefore was not secured as the result of an unreasonable search. This evidence either belonged to the prisoner and was "dislodged" from his person through his unlawful arrest, or it had no connection with him. In either instance it was not evidence to be used against him.

The lower court relied heavily on the opinion of this Court written by our President Judge RHODES in *Commonwealth v. Polite,* 190 Pa. Superior Ct. 329, 154 A. 2d 287; but I fail to see in that case sufficient support for its decision since no question was raised by that defendant as to the legality of his arrest.

Likewise in *Haerr v. United States,* 240 F. 2d 533, no arrest was made prior to finding the contraband.

The rules seem well established that an unlawful arrest cannot justify a search and seizure as an incident thereto, *Worthington v. United States,* 166 F. 2d 557; nor may an arrest be made as a pretext to search for evidence, *United States v. Lefkowitz,* 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877.

In my opinion, both rules were violated in this case.

Our decision in *Commonwealth v. Bosurgi,* 198 Pa. Superior Ct. 47, 182 A. 2d 295, is readily distinguishable from the present one. That case involved a felony of which the arresting officers had knowledge and there was reasonable and probable cause for suspecting the defendant-appellant therein.

I would suppress the evidence in this case and discharge the appellant-defendant in the absence of any other evidence on which to sustain his conviction.

Therefore, I respectfully dissent.