Commonwealth *v.* Bondi, Appellant.

Argued June 9, 1970. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Bernard V. DiGiacomo,* for appellant.

*Paul W. Tressler,* Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney,

*Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 18, 1970:

Appellant was arrested and charged in August 1967 on one bill of indictment with pool selling and bookmaking and on a second bill with setting up a lottery, being concerned with a lottery, and selling lottery tickets. At the trial, before the Honorable J. WILLIAM DITTER, JR. and a jury, appellant was found guilty on the second bill. Demurrers were sustained on the pool selling and bookmaking charges. Motions for a new trial and in arrest of judgment were denied.

The question before us is whether the evidence is sufficient to sustain the verdict. Viewed in the light most favorable to the Commonwealth the evidence is as follows: After receiving a complaint about appellant, the Pennsylvania State Police undertook a periodic surveillance of appellant's activities during his lunch break from his job. Between July 12 and August 2, 1967, the investigating officer, Officer Barrett, observed appellant on five different occasions entering Metz's Drive-In Luncheonette, a lunch counter near appellant's place of employment. On some of those occasions appellant obtained a newspaper containing horse-racing information, commonly referred to as a "scratch sheet," and then made a number of telephone calls. No evidence was introduced concerning the purpose or substance of the calls. On August 9, 1967, after obtaining arrest and search warrants, Officer Barrett and two other officers proceeded to the luncheonette. At this time neither the officers nor their car bore any markings designating them as state policemen. As appellant stepped out of his car and approached the luncheonette, Officer Barrett called to him, "Bondi, State Police, stop." Appellant hesitated briefly and then hurried into the

building pursued by the officers. The officers then made the arrest.

One of the police recovered a card which he had observed the appellant drop inside the building. Although appellant denied any ownership of the card, a handwriting expert testified concerning his analysis of the writing on the card and gave his opinion that the writing was appellant's. Officer Barrett explained the operation of a numbers lottery and stated his opinion that the card in question was a listing of forty-three numbers bets and the amount of each bet. The only notation on the card other than the series of digits representing the bets was the word "W-O-R-K" which appeared at the head of one column. Officer Barrett gave no opinion as to whether the card was more typical of that belonging to a numbers writer as opposed to a player and, on cross-examination, he stated that there was nothing on the card which would permit him to make such a distinction. He testified that while the number of bets indicated on the card would be unusual for a player to make in one day, this amount would not be unusual if made over a longer period of time. Officer Barrett testified that each bet represented on the card was on a different number and gave his opinion that the lack of repetition would be more typical of a record kept by a player than a writer.

The evidence in this case was purely circumstantial and in order to support the conviction it "must be of such volume and quality as to overcome the presumption of innocence and to satisfy a jury of the accused's guilt beyond a reasonable doubt." *Commonwealth v. Zimmerman*, 214 Pa. Superior Ct. 61, 67, 251 A. 2d 819, 821 (1969). " '[T]he theme of guilt must flow from the facts and circumstances proved, and be consistent with them all.' " *Commonwealth v. Simpson*, 436 Pa. 459, 464, 260 A. 2d 751, 754 (1970).

The issue was whether the evidence was sufficient to show that appellant was a numbers writer rather than a player, the latter not being a criminal act. The most significant evidence against appellant was the card containing the alleged numbers plays. The fact that the police saw appellant discard this document, along with the handwriting expert's testimony, clearly indicated appellant's ownership and authorship of it.

The case of *Commonwealth v. Saeli*, 146 Pa. Superior Ct. 555, 22 A. 2d 597 (1941), presented a similar evidential problem. There the primary evidence against the defendant on trial for selling lottery tickets was a slip similar in nature to the one with which we are now concerned. In spite of the opinion of a Commonwealth witness that the slip was used by a writer[1] and the fact that numbers were repeated, the Court reversed that conviction on the ground that the slip of paper did not indicate the defendant was selling numbers rather than playing them. In the case now before us, the Commonwealth's expert admitted his inability to state whether the card belonged to a writer and even went so far as to indicate that the lack of repetition of numbers would be more typical of a player. The Commonwealth argues that the decision in *Saeli* is not relevant here since the specific charge involved there was selling lottery tickets which, the Commonwealth claims, requires stronger evidence than a charge of being concerned with a lottery. The relevance of *Saeli*, however, is that if the slip of paper there was consistent with that belonging to a player, the slip of paper in this case is even more consistent with that inference. In *Commonwealth v. Polite*, 190 Pa. Superior Ct. 329, 154 A. 2d 287 (1959), the Court upheld a conviction

---

[1] Although not set out in the opinion in *Saeli*, the record reveals that the slip contained forty-seven bets and that Corporal DeWitt gave his opinion that the defendant was a writer.

on charges of being concerned with a lottery on evidence similar to that in *Saeli* and this case, but with one important addition. There the evidence was a small package which the defendant had attempted to conceal from the police containing not only a list of numbers bets, but also the money which was associated with those bets. It was this additional evidence which indicated to the Court that the defendant was a numbers writer.

The evidence regarding appellant's noontime activities at the luncheonette may also raise suspicions, but supplies no proof that he was selling numbers. Finally, the Commonwealth asserts that the appellant's conduct of rushing into the luncheonette, discarding the slip of paper and denying his ownership of it presents a strong inference of guilt. It is true that such efforts at concealment have been considered in other lottery convictions. See *Commonwealth v. Tselepis*, 198 Pa. Superior Ct. 449, 181 A. 2d 710 (1962) ; *Commonwealth v. Polite*, supra; and *Commonwealth v. Cese*, 176 Pa. Superior Ct. 650, 109 A. 2d 228 (1954). In all those cases, however, there was additional evidence, such as phone calls from bettors, gambling paraphernalia or money representing bets, and the concealment was considered along with such evidence, all of which is absent here.

We find that the evidence is insufficient as a matter of law to support the conviction.

Judgment reversed and appellant discharged.

WRIGHT, P. J., and WATKINS, J., would affirm on the opinion of Judge DITTER.