WOLFE, P. J.,
— For disposition is defendant’s petition for relief from illegal search and seizure.
Defendant is charged with corrupting or tending to corrupt the morals of two juvenile females.
Defendant alleges his arrest was based solely upon the discovery of evidence at his apartment located at 515Vz East Street, Warren, Pa., to wit, two juveniles, in that police officers entered his apartment without a search warrant for the purpose of making a search and observation and thereby discovered the juveniles.
Defendant requested the court to exclude and suppress all evidence, including the observation of the officers and statements given by the juveniles.
An evidentiary hearing was held and, as a result thereof, the court makes the following
FINDINGS OF FACTS
1. On September 16, 1969, Warren Borough Policemen, Sgts. Zerbe and Kates were dispatched to investigate a missing persons complaint from a mother about her 13-year-old daughter. The mother advised the officers that her daughter and another juvenile female 14 years of age might be at an apartment in back of 515 East Street occupied by one or two older men.
2. On the same date, the officers went to this apartment, rapped on the door and a man by the name of *335 David Stoudnor, a friend of defendant, opened the door and invited the officers in for a cup of tea. Before entering, the officers observed the complainant’s daughter pulling up her pants as she was getting out of bed and, after entering, observed the other girl sitting on a couch in back of the door.
3. No search warrants were obtained by the officers to enter the premises nor did they advise David Stoudnor he could refuse' them entry, and the officers made no announcement prior to their knocking on the door of their reason for being there.
4. Defendant is the lessee of 515 East Street but was not present when the officers entered, at the invitation of the occupant, David Stoudnor.
5. As a result of the officers’ observations, the girls were removed from defendant’s apartment and thereafter written statements were taken from the girls, which statements, if admitted, would be damaging to defendant.
DISCUSSION
When a door to a dwelling is opened in response to a knock by uniformed police without a warrant to search therein and, when opened by one in possession, the officers observe the object of their search, is this evidence constitutionally protected?
There do not appear to be any cases recorded exactly on point; however, recent decisions indicate the direction of the law in this regard.
As a general rule, the mere looking at something by a police officer which is open to plain view is not a search: Commonwealth ex rel. Stoner v. Myers, 199 Pa. Superior Ct. 341 (1962); Ellison v. United States, 206 F. 2d 476; Commonwealth v. Calvarese, 199 Pa. Superior Ct. 319 (1962); Harris v. United States, 390 U. S. 234; 88 S. Ct. 992.
The evidence proposed to be introduced must be *336 obtained by a “search”: Commonwealth ex rel. Stoner v. Myers, ibid. A search consists of a prying into or seeking out. In the absence of a physical entry into the premises secured by the Fourth Amendment, there is no unreasonable search.
In Commonwealth ex rel. Bowers v. Rundle, 200 Pa. Superior Ct. 496, the court found, where police officers on patrol observed relator and another in a truck which was being operated without lights, and observed cases of whiskey therein as there was no partition between the seats and the body of the truck and thus readily discernible directly behind the seats, there was no unreasonable search and seizure as the objects were in plain view.
In the current case, objection is made that the officers entered the apartment without defendant’s consent, that David Stoudnor had no authority from defendant to invite them in and David Stoudnor had no proprietary interest in the premises to authorize their invitation.
The cases have settled that the owner of premises may consent to the search of his premises and if evidence is seized belonging to an occupant thereof, he has no cause to complain: Commonwealth v. Hardy, 423 Pa. 208 (1966); Commonwealth v. McKenna, 202 Pa. Superior Ct. 360 (1963).
Here, however, the owner was not present when his friend made the invitation. Indeed, defendant claims that the police barged in as soon as the door was opened and no invitation was made. Noticably, however, one of the juvenile girls testified to this but no testimony was offered from David Stoudnor.
We do not think the credible weight of the evidence supports the denial of an invitation. The denial did not come from David Stoudnor and as a fact he did not *337 appear as a witness for defendant nor give any reasonable explanation why he was not present.
In United States v. Evans, 194 F. Supp. 90 (1961), the court in striking down a search and seizure without a warrant, and upholding the constitutional requirement that the key to invasion of the home be a magistrate’s order rather than an investigating officer’s desire, stated:
. . the Court should not be understood as holding that the police may never go to a home and ask to speak to a suspect about rumors of his involvement in a crime; the holding here condemns only their going with the intention of making a search. The present fact-situation not being one in which a searchless home visit is presented, the Court can only say generally that such a visit appears to be a reasonable way in which police can conduct the pre-arrest investigative process, and at the same time give to innocent suspects the opportunity to clear themselves; but the Court must also say that such a method of police activity, like ‘inviting’ ‘suspects’ to appear for questioning at police headquarters, is one which must always be open to judicial scrutiny of claimed police abuses.”
In the current case, defendant testified David Stoudnor had permission to let people in his apartment when defendant was present; otherwise, defendant expressed no opinion as to the authority of David Stoudnor when defendant was not present.
In United States v. Speras, 210 F. 2d 69, the court pointed out that where two persons have equal right to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either.
Of course, we are here considering a situation where a friend of the lessee extends the invitation. No direct *338 or indirect orders were given to defendant’s friend not to open the door in response to a knock. On the contrary, if defendant left his premises in charge of his friend, we think it fair for him to reason he would open the door and, hence, should have no legal grounds to complain if the officers standing at the threshold observe, without entering, the subject of their inquiry.
We think defendant overlooks the fact the officers were searching for two juvenile girls and were not bent on searching or arresting defendant or his premises. The officers did not approach defendant’s premises with any intent to make an arrest or to make a search therein. Defendant argues to the contrary, but the record does not substantiate his contention. The record discloses the officers did not know defendant prior to this occasion and did not know defendant lived in this particular apartment. The one juvenile substantiated that the officers made no search of the premises after they entered therein.
It is well established an officer would be remiss in his duties if he ignored incriminating evidence obvious to his view: Commonwealth v. Braboy, 209 Pa. Superior Ct. 10 (1966), quoting from Commonwealth v. Anderson, 208 Pa. Superior Ct. 323: “ ‘It is generally held that the mere looking at that which is open to view is not a search: United States v. Lee, 274 U. S. 559, Ellison v. United States, 206 F. 2d 476. In the Ellison case at page 478, the court said: “If an officer sees the fruits of crime — or what he has good reason to believe to be the fruits of crime — lying freely exposed on a suspect’s property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough without requiring a police officer to free his mind of clues lying flatly before him.” ’ ”
In Fullbright v. United States, 392 F. 2d 432 *339 (1968), Federal investigators, with the- aid of binoculars, observed defendants through an open door operating a still inside a shed. In holding there was no illegal search followed by a warrant and seizure, the court stated the extent of the investigators’ action at the time was to look.
“If the investigators had physically breached the curtilage there would be little doubt that any observations made therein would have been proscribed. But observations from outside the curtilage of activities within are not generally interdicted by the Constitution. Indeed, to so hold might require passing officers to close their eyes to the commission of felonies on front doorsteps.”
In reviewing and striking down the search and seizure evidence obtained by electronic surveillance by use of a device attached to the outside of a public telephone booth, the court, in Katz v. United States, 389 U. S. 347, 88 S. Ct. 507, observed what a person knowingly exposes to the public, even in his home or office, is not a subject of the Fourth Amendment protection.
Further, notwithstanding defendant’s contention of illegally obtained evidence, what was said in Jones v. United States, 362 U. S. 257, 80 S. Ct. 725 (1960), in considering Federal Rules of Criminal Procedure, is appropriate to the instant case:
“In order to qualify as a person aggrieved by an unlawful search and seizure’ one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.”
In the current case, the police were searching for two juvenile girls, not defendant, and found them in *340 defendant’s apartment and as a result of their find they filed the current charge. Defendant was not a victim of a search or a seizure albeit the subjects in his apartment were. To hold their statements given to the police after they were removed from defendant’s apartment and to deny the Commonwealth the benefit of the officers’ observations and subsequent investigative evidence is, in the court’s opinion, contrary to reason. Only the girls were removed from the apartment at the officers’ request and they voluntarily gave their statements. Defendant was not restrained of any of his liberty, his apartment was not searched and none of his belongings were seized.
Defendant argues that there was a definite search being conducted for the missing girls. This is true, but defendant overlooks it was the girls that were the subject of the officers’ inquiry and not defendant. Defendant complains the officers made no announcement of their purpose for their entry. It is established as a general rule an officer must announce his purpose in the execution of a search warrant or to break a door to effect an arrest: Commonwealth v. McCloskey, 217 Pa. Superior Ct. 432 (1970). This, however, is not the situation the court is now considering. The officers admittedly had no search warrant but had no need for any, as defendant’s premises were not searched nor was any arrest to be made, and even if this were the case, no opportunity to advise the occupant was given of their purpose in requesting an entry. As soon as the door was opened, their eyes fell upon their inquiry. See Miller v. United States, 357 U. S. 301, 78 S. Ct. 1190 (1958). In Commonwealth v. Robert Augustine, 216 Pa. Superior Ct. 748, 259 A. 2d 885, the court, in considering a similar issue, found no Illegal search when an officer fohowed footprints in the snow from the *341 scene of a burglary nearby leading to a station wagon parked in a driveway where the officer saw what he believed to be stolen cigarettes and noted then the footprints leading towards a home. The officer, with several others, came to the door of the Albert Augustine, Jr., home and knocked. The officers were in full uniform. They inquired as to who owned the station wagon. Upon request to talk to the owner of the wagon, the resident owner of the home said, “Okay, come on in.” In a small pantry-like area one of the officers noticed that there was a pair of boots in the kitchen with a pool of water about the soles. Other boots in the kitchen did not have such water. Subsequently, the officers obtained a search warrant after defendant demanded he secure same. In following the reasoning in Commonwealth v. Braboy, 209 Pa. Superior Ct. 10, 431 Pa. 365, the court reasoned there was no search, or at least not an unreasonable search, for the objects taken were clearly visible or were voluntarily surrendered to the officer.
Admittedly, the officers in this case were not pursuing a felon nor did they have any probable cause to believe that a felony had been committed but we think this is not the issue in this case. They were dispatched to ascertain the whereabouts of two juvenile girls and found them. If defendant’s contention be correct, this means that in every case of this nature police officers would not be permitted to knock upon doors', make any inquiry investigatory in nature, control juveniles without obtaining a search warrant to remove them from unauthorized places or pursue juveniles at the request of authorized personnel, to wit, parents.
Consequently, this court holds that the evidence *342 obtained by the officers was legally obtained and, therefore, the court makes the following order:
ORDER
And now, to wit, March 26, 1971, defendant’s petition for relief is denied and the observations of the officers as well as the statements from the juveniles may be used by the Commonwealth at time of trial. Exceptions noted to Defendant.