J-S21013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERIK LOPEZ TORRALBA | |
| Appellant | No. 2434 EDA 2018 |

Appeal from the PCRA Order Dated June 8, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-3427-2015

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 25, 2019**

Appellant Erik Lopez Torralba *pro se* appeals from the June 8, 2018 order of the Court of Common Pleas of Montgomery County ("PCRA court"), which denied, without an evidentiary hearing, his request for collateral relief under the Post Conviction Relief Act (the "Act"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we vacate and remand.

The facts and procedural history underlying this appeal are undisputed. As recounted by a prior panel of this Court on direct review:

> Detective James Wood testified that, on April 14, 2015, he was participating in the investigation of a large-scale heroin trafficking operation in Norristown, Montgomery County, Pennsylvania. At approximately 1:10 p.m. on that date, Detective Wood was sitting in an unmarked car in the vicinity of Marshall and Arch Streets, waiting for uniformed officers to make a traffic stop of a 2005 Acura suspected to be transporting a large quantity of heroin. Before the traffic stop could take place, the Acura pulled into a parking spot on Arch Street. There were three people inside the vehicle: the driver—subsequently identified as [Appellant]—and two passengers.

Accompanied by two uniformed officers, Detective Wood—who was in plain clothes with a bullet-proof vest with the word "Police" written on the front—approached the Acura. While the uniformed officers dealt with the passengers, Detective Wood went to the driver's side of the Acura, where he encountered [Appellant]. The detective identified himself, informed [Appellant] that he was conducting a drug investigation, and directed [Appellant] to get out of the Acura, following which the detective performed a "pat down" of [Appellant] for officer safety. The "pat down" did not lead to the discovery of any weapons. Detective Wood testified that, although he was armed himself, his gun was concealed inside his police vest. The detective testified that he did not display his weapon at any point during his entire encounter with [Appellant].

Detective Wood testified that his conversation with [Appellant] on Arch Street was conducted in a calm manner, with no threats made and no raised voices. The detective testified that he did not put his hands on [Appellant] apart from the "pat down." The detective testified that, during the course of this conversation, he asked [Appellant] for permission to search the Acura, and that [Appellant] verbally consented to the search.

Detective Wood, however, did not search the Acura at this point, but instead directed that [Appellant] be placed inside a marked police vehicle and transported to the Norristown Police Station. The detective himself then drove [Appellant's] Acura to the police station, a trip of approximately one minute.

Arriving at the police station at approximately 1:25 p.m., Detective Wood retrieved a pre-printed "consent to search form" from another officer. The detective then directed [Appellant] to sit in the front passenger seat of the Acura while the detective sat in the driver's seat. Detective Wood testified that he did this so that [Appellant] would not feel intimidated by all of the other officers moving around the station. Inside the Acura, Detective Wood asked [Appellant] if he would be willing to provide a written consent to searches of his car, residence and cellular telephone. [Appellant] agreed to provide a written consent to search.

Detective Wood handwrote on the form specific identifying information for [Appellant's] Acura, his address, and his cellular telephone. The detective did not testify as to his asking [Appellant] for any identifying information concerning the Acura (*i.e.*, the VIN number or registration number), and plainly had no reason to do so, as the license number and VIN number were readily apparent on the vehicle itself. In regard to [Appellant's] phone, the detective testified that he had noted the presence of an iPhone on the center console of the vehicle and had asked [Appellant] if it was his. [Appellant] had replied that it was. The [Appellant] also provided Detective Wood with his address.

Detective Wood testified that—prior to having [Appellant] sign the consent to search form—he read the form aloud to [Appellant] and

also asked [Appellant] to read it himself. On its face, the form stated in pre-printed language:

> I understand that I have the right to refuse the consent to search described above and the right to refuse to sign this form.
>
> I further state that no promises, threats, force, physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Detective Wood testified that he verbally informed [Appellant] that he was free to revoke his consent to search. Pressed on this issue in cross-examination by [defense counsel], Detective Wood testified: "I told him that he could stop the search at any time." [The trial court] fully credited Detective Wood's testimony in its entirety.

[Appellant] signed the "consent to search" form, which was entered into evidence as CS-1. The detective testified that the handwritten identification information for the Acura, [Appellant's] address, and the cell phone [were] all written on the form at the time [Appellant] signed it[.]

Detective Wood testified that his entire discussion with [Appellant] inside the Acura was conducted calmly, with no threats, raised voices, or weapons displayed, and that [Appellant] was not handcuffed during the discussion.

After [Appellant] signed the "consent to search" form, [Appellant] and Detective Wood exited the Acura. With [Appellant] standing to the side, Detective Wood and another officer conducted a fifteen minute search of the Acura, discovering nothing illegal at that time.

Retaining [Appellant's] cellular telephone for a subsequent search, Detective Wood then gave [Appellant] the keys to his Acura and asked him to drive to his residence for the search to which [Appellant] had consented. [Appellant] agreed, and Detective Wood and other officers followed [Appellant] to his home in separate vehicles. After arriving at [Appellant's] home, Detective Wood and other officers searched the residence, ultimately discovering a large amount of what [] transpired to be heroin. A subsequent follow-up search of the Acura led to the discovery of more heroin concealed in the vehicle.

*Commonwealth v. Lopez-Torralba*, No. 2769 EDA 2016, unpublished memorandum at 2-4 (Pa. Super. filed July 3, 2017) (citing Trial Court Opinion, 12/15/16, at 4-8) (internal citations omitted). Appellant was charged with

two counts of possession of heroin with intent to deliver (35 P.S. § 780-113(a)(30)), two counts of conspiracy to possess heroin with intent to deliver (18 Pa.C.S.A. § 903(a)(1)), and one count of possession of drug paraphernalia (35 P.S. § 780-113(a)(32)).  On February 26, 2016, Appellant filed an omnibus pretrial motion, which included a motion to suppress the evidence found in his vehicle, cellular telephone, and residence.  On March 22, 2016, the trial court conducted a suppression hearing, following which it denied Appellant's motion to suppress.  On March 30, 2016, a jury convicted Appellant on all charges.  On August 4, 2016, the trial court sentenced Appellant to an aggregate term of nine to eighteen years' imprisonment.  As noted earlier, on July 3, 2017, a panel of this Court affirmed Appellant's judgment of sentence.  Appellant did not file a petition for allowance of appeal in our Supreme Court.  As a result, Appellant's judgment of sentence became final on August 2, 2017.

On November 21, 2017, Appellant *pro se* filed the instant PCRA petition, raising claims for ineffective assistance of trial counsel.  The PCRA court eventually appointed counsel, Attorney Robert Adshead, who then filed a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) and petitioned to withdraw from the case.  The PCRA court granted counsel's petition on April 18, 2018.  The PCRA court subsequently issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing.  Appellant filed a response to the PCRA court's Rule 907 notice, raising an ineffectiveness

claim against his PCRA counsel, Attorney Adshead. On June 8, 2018, the PCRA court denied Appellant PCRA relief without a hearing. Appellant timely appealed to this Court.

The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. On July 31, 2018, Appellant *pro se* filed a Rule 1925(b) statement, raising the following issues, as reproduced verbatim:

> A. The PCRA Court abused its discretion in summarily dismissing the instant Post-Conviction petition without a hearing where Petitioner raised genuine issues of trial counsel's ineffectiveness which, if resolved in his favor, would clearly entitle him to relief. It is axiomatic, our Appellate Courts have admonished that the point in time at which a PCRA court may determine that a Petitioner's claims are meritless or frivolous is "after the petitioner has been afforded a full and fair opportunity to present those claims." ***Id. Commonwealth v. Kaufmann***, 592 A.2d 691, 695 (Pa. Super. 1991).

> In the instant PCRA proceeding, where PCRA counsel submitted a "no merit letter" and attached an "explanation letter" from trial counsel purportedly addressing the claims of trial counsel's ineffectiveness raised in the initial-review post-conviction petition, and trial counsel fails to address or proffer a reasonable basis for his action or inaction alleged in the petition, then the PCRA court [must] conduct an evidentiary hearing. ***See Commonwealth v. Cousar***, 154 A.2d 287, 297 (Pa. 2017) ("where PCRA counsel attaches an 'affidavit' from trial counsel that fails to proffer a 'strategy' pertaining to the claims of trial counsel's ineffectiveness raised in the Post-Conviction petition, the PCRA court must conduct an evidentiary hearing to determine whether counsel can proffer a trial strategy for the alleged omissions"). ***Id.***

> Without granting Appellant meaningful procedural tools, such as, PCRA discovery requested in his petition and an evidentiary bearing to prove he is entitled to relief, the instant PCRA proceeding was essentially delineated to nothing more than a meaningless exercise with no chance of success.

> B. Court Appointed PCRA Counsel, Robert Adshead, failed to fulfill his duty once he accepted appointment to provide Appellant meaningful assistance to afford him a full and fair opportunity to prove the meritorious claims of trial counsel's ineffective

assistance raised for the first time in the instant initial-review post-conviction petition. Appellant raised in his *pro se* post-conviction petition genuine meritorious issues of trial counsel's ineffectiveness which were clearly supported by the record. Here, it was impossible to discern whether a reasonable basis existed for trial counsel's omissions alleged in Appellant's *pro se* petition. It was improper for Attorney Adshead to divine alternative choices or strategy trial counsel could of had when trial counsel had not stated his reasons for the action or inaction. This is particularly true where Attorney Adshead attached an "explanation letter" from trial counsel to his "no merit letter" and trial counsel did not even address the issues raised in tie PCRA petition. It is not enough to take a cold record and submit a "no merit letter" and speculate or state alternative choices counsel could have made.

C. The PCRA court erred in summarily dismissing the instant petition without addressing Appellant's specific discovery request set forth in the petition in accordance with Pa.R.Crim.P. 902(A)(16) and (E)(1). The discovery request specifically sought material evidence related to two of the claims raised, i.e., "exploitation of an unlawful arrest" and "statements and audio phone recordings" between the confidential informant and Commonwealth key witness, Gladiz Basurto Leal. Basurto Leal did a one-on-one drug negotiation with the informant for the purchase of one kilogram of heroin. This discovery material was relevant to prove the "merits" and "prejudice" for counsel's inexcusable failure to file a motion for the identity of the informant. Moreover, the informant's statements and telephone recordings with Basurto Leal may have possibly revealed core ***Brady*** material. It was error for the PCRA court to summarily dismiss the instant petition without addressing Appellant's specific discovery request set forth in his petition.

D. The PCRA court denied Appellant a fundamental fair post–conviction process in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution—where he was denied constitutionally guaranteed effective assistance of counsel as he would have enjoyed had he raised the instant claims of trial counsel's ineffective assistance on direct appeal. As the PCRA court is aware, in accordance with the Pennsylvania Supreme Court's decision in ***Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002), Appellant was required to defer raising claims of trial counsel's ineffective assistance until the filing of an initial-review post-conviction proceeding. Thus, given this is the first designated proceeding for raising trial counsel's ineffective assistance, the instant collateral proceeding is in many ways the equivalent of Appellant's direct appeal as to the ineffective assistance of trial counsel claims. As such, Appellant is entitled to the full procedural due process protections he would have been guaranteed had he been permitted to raise the instant claims of trial counsel's ineffective assistance on direct appeal.

The Superior Court's decision in **Finley** and the Pennsylvania Supreme Court's decision in **Turner** pre-dated the decision in **Commonwealth v. Grant**, **supra**, by 14 years and it denies a Petitioner a fundamentally fair procedure to vindicate meritorious claims of trial counsel's ineffective assistance raised for the first time in an initial-review collateral proceeding. Under the rule-based right to counsel in a first PCRA proceeding, and the **Turner**/**Finley** methodology, Attorney Adshead was permitted to take a cold record and file a "no merit letter" and argue against Appellant's interest to support a request to withdraw. All too often, PCRA court's routinely mechanically defer to PCRA counsel's "no merit letter" and grant appointed counsel's withdrawal request, thus, leaving Appellant proceeding *pro se* before the PCRA court and on appeal. The fundamentally unfair procedure employed here makes the rule based right to appointed counsel on a first PCRA petition and on appeal an illusion.

Appellant's Rule 1925(b) Statement, 7/31/18 at 1-4 (sic). In response, the PCRA court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant's assertions of error lacked merit.

On appeal,[1] Appellant raises four issues for our review:

[I.] Did the post-conviction court abuse its discretion in summarily dismissing Appellant's petition without a hearing when there was arguably meritorious issues of trial counsel's ineffective assistance on the face of the record?

[II.] Did court-appointed post-conviction counsel provide meaningful assistance in filing a "no-merit letter" when there was genuine issues of trial counsel's ineffective assistance on the face of the record, if proven, would clearly entitle Appellant to post-conviction relief?

[III.] Did the post-conviction court err in summarily dismissing the post-conviction relief act petition pursuant to counsel's "no merit letter" without determining whether the specific discovery request set forth in the petition would give support to Appellant's issues of trial counsel's ineffectiveness assistance?

---

[1] "In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa. 2009) (citation omitted).

[IV.] Did the post-conviction court deny Appellant a fundamentally fair procedure to afford him an opportunity to prove the issues of trial counsel's ineffective assistance which were deferred from direct review and designated to be raised for the first time in an initial-review post-conviction relief action petition essentially making it the equivalent of direct appeal as to the ineffective assistance of trial counsel issues?

Appellant's Brief at 4 (unnecessary capitalizations omitted) (sic).

Appellant essentially asserts six distinct issues, four of which relate to ineffectiveness claims. Appellant argues that his trial counsel was ineffective for: first, failing to challenge as illegal Appellant's detention by the police because the police allegedly lacked both reasonable suspicion and probable cause and as a result, all evidence, including statements, obtained by the police should have been suppressed as fruits of the poisonous tree; second, failing to file motion to compel disclosure of the confidential informant's identity because the informant allegedly possessed information material and favorable to Appellant's case; third, failing to provide Appellant with adequate and competent advice relating to a guilty plea offer that Appellant rejected; and fourth, failing to object at the time of sentencing to the trial court's alleged error in not giving Appellant credit for time served while awaiting trial in this case. Fifth, Appellant argues that his appointed PCRA counsel was ineffective insofar as counsel failed to pursue the claims raised in his *pro se* PCRA petition and as detailed above. Sixth, the PCRA court erred in failing to grant Appellant's discovery requests.

Instantly, given the complexity of the claims raised and the dearth of a record below, we are unable to engage in any meaningful appellate review.

Specifically, as Appellant notes, the PCRA court failed to conduct an evidentiary hearing on Appellant's ineffectiveness claims and render necessary factual findings. We therefore cannot assess the merits of Appellant's claims or trial counsel's tactical reasons for his trial decisions. As a result, we must vacate the PCRA court's order denying Appellant's PCRA petition and remand the matter to the PCRA court to conduct an evidentiary hearing to address fully the claims identified above.[2] If Appellant determines other issues must be raised in response to the trial court's decision, Appellant shall be given the opportunity to amend his Rule 1925(b) statement, and thereafter, the trial court shall supplement its decision to address these other issues.

Order vacated. Case remanded. Jurisdiction relinquished. Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/19

---

[2] We express no opinion as to the merits of Appellant's ineffectiveness claims.