## Commonwealth *v.* Adams, Appellant.

Argued October 14, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*William W. McAdams,* with him *Stewart P. Clarke,* for appellant.

*Basil C. Clare,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney, for appellee.

OPINION BY WRIGHT, J., January 19, 1954:

Eddie Adams was tried in Delaware County on a bill of indictment charging lottery and traffic in lottery tickets. See Act of June 24, 1939, P. L. 872, §§601, 602; 18 P.S. §§4601, 4602. After a verdict of guilty, he filed motions in arrest of judgment and for a new trial. The lower court refused to grant these motions, and this appeal followed.

On September 20, 1952, two police officers of Radnor Township, who had been watching appellant's movements, arrested him on a public street in Wayne. As a result of a search at the police station, there was found in appellant's watch pocket a slip of paper (Commonwealth Exhibit 1) on which were written twenty-four numbers in three columns. There was also found in appellant's hat band a slip of paper (Com-

monwealth Exhibit 2) on which three numbers were written. Exhibit 1 was a carbon copy whereas Exhibit 2 was an original. Although appellant admitted that both papers were in his handwriting, he at first denied knowing what the figures represented. Later he stated that they were number plays he himself had made the previous day. At the preliminary hearing before a justice of the peace, appellant "pleaded guilty". When called for trial, he entered a plea of not guilty.

On behalf of the Commonwealth, Corporal Rocco P. Urella, a member of the Pennsylvania State Police, testified without objection as an expert witness. He explained to the jury in detail the manner in which the numbers lottery is operated and the methods employed by those engaged in selling tickets. With regard to Exhibit 1, Corporal Urella testified: "Over a period of years we have often encountered these slips of paper, they vary or deviate from the ordinary number book to avoid suspicion; and they use ordinary paper, tablet paper, scrap paper, or in this case we have encountered this quite often recently. This is what the barbers use in barber shops. Now this is a carbon copy of number plays that were written. The original goes to the bank in this particular case here, and the carbon copy is retained by the writer". He pointed out that Exhibit 1 was the type of paper which a writer would retain, while Exhibit 2 was the type of paper which a player would retain. Corporal Urella further testified that in his opinion appellant "definitely was writing numbers".

Appellant testified that he was playing numbers, but that he was not a numbers writer. He was unable to explain why a particular number appeared in two columns of Exhibit 1, why one paper was a carbon copy and the other an original, or where he obtained the type of paper used. He finally said it was paper in

which butter was wrapped, which he had cut into shape. When asked where he left his number plays, appellant replied, "I leave them on a table in my living room. The door is unlocked all the time. They just come into my house, pick up the slips and the money off the table and go on about their business". He denied making any confession before the Justice of the Peace.

Appellant relies principally on *Commonwealth v. Saeli*, 146 Pa. Superior Ct. 555, 22 A. 2d 597. In that case there was found upon defendant's person an "ordinary slip of paper" having no resemblance to that used in a numbers book and bearing no indication that it was "associated with the lottery business, other than the numbers written thereon". Exhibit 1 presently under consideration was not an ordinary slip of paper. There was ample evidence in the case upon which the jurors could base their verdict of guilty. In the words of Judge BRETHERICK, "Only a credulous dupe could be expected to accept defendant's limping and anemic explanations". Appellant has also cited *Commonwealth v. Marino*, 142 Pa. Superior Ct. 327, 16 A. 2d 314, and *Commonwealth v. Rosen*, 141 Pa. Superior Ct. 272, 14 A. 2d 833, but these decisions are not controlling. In the *Marino* case the only proof in support of the charge was that defendant was a passenger in a car operated by a numbers writer. In the *Rosen* case it was not established that defendant was in a gambling establishment for any other purpose than to place bets. Appellant's position that the exhibits were inadmissible because obtained by illegal search and seizure is untenable: *Commonwealth v. Rich*, 174 Pa. Superior Ct. 174, 100 A. 2d 144.

Appellant's final contention is that the lower court erred in admitting testimony concerning his alleged confession before the Justice of the Peace. He argues that the Commonwealth failed to prove the corpus de-

licti, citing *Commonwealth v. Gold et ux.*, 155 Pa. Superior Ct. 364, 38 A. 2d 486, in which we held that defendants were improperly convicted of larceny and receiving stolen goods. In that case the evidence failed to establish ownership of the goods alleged to have been stolen. Our decision was based upon the proposition that before a defendant's confession may be received in evidence, the Commonwealth must first prove that the crime charged was actually committed by someone. See *Commonwealth v. Winter*, 174 Pa. Superior Ct. 35, 98 A. 2d 221. Passing the question raised by the Commonwealth that this rule does not apply in misdemeanor cases, we are satisfied that the evidence in the present case was entirely sufficient to prove corpus delicti. In *Commonwealth v. Banks*, 98 Pa. Superior Ct. 432, speaking through Judge KELLER, we said: "It is not necessary for conviction that there be evidence of the actual operation of the lottery . . . It is sufficient if the defendant be found in possession of the paraphernalia necessary for operation; and when supplemented by defendant's admissions that he was concerned in its conduct or management, as a backer, the case was certainly for the jury".

It should perhaps be noted the evidence as to the confession was offered in rebuttal. While it would have been admissible as evidence in chief, it was properly received in rebuttal for the purpose of contradicting appellant's testimony: *Commonwealth v. O'Malley*, 81 Pa. Superior Ct. 100; *Commonwealth v. Levy*, 146 Pa. Superior Ct. 564, 23 A. 2d 97. In any event, the admission in rebuttal of testimony which should have been offered in chief is within the discretion of the trial judge: *Commonwealth v. Libonati*, 346 Pa. 504, 31 A. 2d 95.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as

he may be there called and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.