## Commonwealth *v.* Nardello, Appellant.

Argued June 13, 1961; reargued December 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before LIPEZ, P. J., specially presiding, without a jury.

*Arthur Silverman*, with him *Ettinger, Gallagher & Silverman*, for appellant.

*Joseph M. Smith*, Assistant District Attorney, with him *Arlen Specter*, Assistant District Attorney, *Paul*

*M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY FLOOD, J., January 16, 1962:

These are appeals from convictions on two indictments charging pool selling and bookmaking upon the ground that the evidence was not sufficient for conviction in either case.

In the first case, on November 6, 1959, four officers, armed with a search and seizure warrant, entered a dwelling at 2306 South Lambert Street. In the front bedroom of the second floor they found the appellant sitting on a bed. They found with him sixty-seven slips containing horse plays and number bets. Most of them were laid out on the bed upon which the defendant was sitting. Officer McShea testified that these slips were numbers and horse race bets and totalled $8,432 per day. He also found sixteen Armstrong sheets dated from October 17 through November 6, 1959. While the police report indicated that the appellant did not live on the premises, at the time of the arrest he was alone on the premises except for a domestic in another part of the house. Lieutenant Steiger testified that upon interrogation the appellant stated that he "had been hired to take action, and that he was paid a salary of $50 a week."

In the second case, on December 1, 1959 three police officers, armed with a search and seizure warrant, found the appellant at a dwelling at 1827 Mifflin Street, in a second story front bedroom, clad in pajamas. On the bed were two Armstrong sheets and two tally sheets listing names and amounts of money and eighty-five slips of paper containing 755 horse bets and 248 number bets. The officer testified that these slips were numbers and horse race bets and that the betting amounted to approximately $3,000 per day. While he testified on

cross-examination that the appellant did not live on the premises, it appeared that no one else was in the house at the time of the arrest. The defendant made no statement.

1. The appellant argues that inasmuch as he was not indicted for assisting or abetting another person in bookmaking and pool selling, his conviction was improper. He contends that the circumstantial evidence proved no more than aiding and abetting and was not sufficient to prove management of the pool selling or bookmaking operation by the defendant. However, none of the cases cited by him is authority for this proposition, and we know of no support for it in our cases. Any doubt about this is set at rest by our decision in *Commonwealth v. Gregory,* 183 Pa. Superior Ct. 53, 127 A. 2d 788 (1956), where the evidence was held sufficient to convict the defendant of pool selling and bookmaking.

The evidence here, as the trial judge stated in his opinion, is sufficient to make out a prima facie case of participating in the operation of a pool selling and horse race betting business on the premises. No defense was presented and nothing appeared in the testimony to prevent the trial judge from drawing the inference of guilt of the crimes charged. ·

The circumstantial evidence here is stronger against the appellant than that in *Commonwealth v. Gregory,* supra. The evidence here indicated, as the trial judge said, a large operation—as much as $8,500 per day in the first case and $3,000 in the second. While the defendant did not appear to own the premises, as in the *Gregory* case, he was alone in the house except for a domestic on the first arrest and he was alone in his pajamas in the bedroom of the premises involved in the second arrest. And, if he did not have his hand in a waste basket where there were some discarded slips, as in *Commonwealth v. Gregory,* supra, there were on each

occasion a much larger number of slips in the room with the defendant than were found in the *Gregory* case. On both occasions here the slips were laid out on the bed in the room where the defendant was found. On the first arrest the defendant also made an admission of participation, while there was no admission in the *Gregory* case. On the second occasion, the telephone rang "at different times" and when the officers answered, there was no response.

2. The defendant also argues that he was convicted and sentenced for four crimes arising out of only two acts and that this is improper. But this is not so. There was evidence of many criminal acts. There were only two arrests, it is true, one on November 6, 1959, and one on December 1, 1959, but the evidence found on the occasion of each arrest would justify a conviction of a large number of crimes. On each arrest evidence was found indicating that the defendant was concerned in taking a large number of horse plays and number bets.

The defendant has appealed only the convictions and the prison sentences under Bills Nos. 1869 and 1871 charging bookmaking and pool selling. But he was also indicted and convicted on two other bills, Nos. 1870 and 1872, charging him with setting up an illegal lottery. Bills Nos. 1871 and 1872 relate to the arrest of November 6, 1959, while Bills Nos. 1869 and 1870 relate to the arrest of December 1, 1959. The defendant was adjudged guilty on all four bills. The convictions and sentences under Bills Nos. 1870 and 1872 were not appealed. We do not have these bills before us but the trial judge states in his opinion that the defendant was adjudged guilty of setting up a lottery and fined under each of these bills.

In the bills of indictment before us, the defendant was indicted for pool selling and bookmaking, and was found guilty of these crimes and separately sentenced

on each bill. The evidence justified a finding that the defendant was concerned with bookmaking on horse races, as well as setting up a lottery, and was engaged in both types of activity at different times at or prior to each of the two arrests. There was therefore evidence of at least four different crimes and, in fact, of many more.

The fact that the two operations of horse race bookmaking and setting up a numbers lottery were carried on at the same time does not prevent them from being two separate crimes. Two agents of the defendant might well be taking both types of bets at the same time and turning them in to him. This would clearly be two crimes, and we know of no theory under which they would be held to merge. It would amount to operating two criminal enterprises from the same premises, and perhaps with some of the same equipment. They are nonetheless separate crimes because they occur simultaneously in the same location. Since they do not merge, the court has the right to sentence separately for each of them.

The evidence would also justify a finding that bets represented by the slips were placed with the defendant himself at various times. If so, he committed a separate criminal act upon each cash receipt.

The appellant argues that as to each arrest the only act of the appellant was being present in a room where there were lottery or bookmaking slips, and that for this one act he was given two sentences. This is not the fact. Being present in the room with the slips is not in itself a crime, since a person who was merely betting might be present in the room. However, it may be circumstantial evidence of a number of other criminal acts committed by the defendant in connection with horse race and numbers betting activities. It was here properly considered by the trial judge as evidence under all the circumstances of two or more criminal

acts. He properly found the defendant guilty of two crimes in connection with each arrest and sentenced him separately for each. See *Commonwealth v. Gregory,* supra, where separate sentences were imposed under similar circumstances.

The sentences are affirmed and appellant is directed to appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentences or any part of them which had not been performed at the time the appeals were made a supersedeas.