**UNITED STATES of America ex rel. John YATES**

v.

**Alfred T. RUNDLE, Supt.**

**Civ. A. No. 70–341.**

United States District Court, E. D. Pennsylvania.

Jan. 20, 1971.

John Yates, pro se.

Arlen Specter, Dist Atty., T. Michael Mather, Asst. Dist. Atty., for respondent.

## MEMORANDUM AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Relator, a state court prisoner, was tried before the Honorable Theodore B. Smith, Jr., sitting without a jury, in the December sessions, 1967, of the Philadelphia County Court of Common Pleas, on bills of indictment Nos. 170 and 173, and found guilty of aggravated robbery and carrying a concealed deadly weapon. The court imposed sentences of two to ten years on the robbery charge, and a concurrent term of one year on the concealed weapon charge. Although the issues raised herein are not identical to

those raised on the state court appeals, the Commonwealth concedes that they are sufficiently similar to justify a finding that the state appellate courts have been given an opportunity to consider the merits of relator's case, so that this Court's jurisdiction is properly invoked.

Relator asserts that he was convicted as the result of the Commonwealth knowingly coercing his co-indictee into testifying against him over the co-indictee's claim of his privilege against self-incrimination.

The crime itself took place as follows. At 5 o'clock P.M. on November 1, 1967, John Yates was a participant in a dice game with several other men, in a room over the barber shop at 1428 South Street, Philadelphia. The owner of the shop, Amos Florence, testified at relator's trial that Yates drew a gun during the course of the game, and stole the money in play. Florence testified that Yates ordered Nathaniel Williams to pick up the money. Yates, Williams and a third man left the game, and were apprehended ten minutes later.

Williams, when called to the stand, said, "I'm not testifying" (Notes of Testimony 13; hereinafter N.T.), basing his refusal to do so on his right to avoid self-incrimination. The Court then inquired of him if he had been indicted, tried, and found not guilty of the crimes charged in this matter. When Williams replied that he had, the Court discussed at length with defense counsel and the District Attorney the possibility of the witness incriminating himself on any other charge. At the conclusion of this discussion, the court said,

"I do not see any possibility of this man incriminating himself.

*    *    *    *    *    *

"I can't think of a single charge that might be placed against him at this point.

*    *    *    *    *    *

"You will have to testify or else go to prison. So you better speak up and do it fast." (N.T. 16).

The District Attorney then said, "I will make life easy for you. I will give you a chance to keep yourself out of jail." He then asked the witness two questions:

"You heard Mr. Florence testify, didn't you?

"Yes, I heard him.

"Isn't that pretty much what happened?

"Yes." (N.T. 16).

Relator contends that the District Attorney coerced Williams into an affirmative state of mind, and then posed an affirmative question, the answer to which was in direct contradiction to prior testimony given by Williams at his own trial and on his own behalf.

■ ■    A witness is not made a perjuror by the mere fact that he admits his participation in a crime of which he had been previously acquitted. Even the guilty possess the right to force the Commonwealth to prove their guilt beyond a reasonable doubt. Relator's allegations, therefore, even if true, are insufficient to prove that the Commonwealth knowingly used perjured testimony. Therefore, the question to be resolved is whether requiring an indicted, but acquitted, co-indictee to testify for the prosecution over his claim of testimonial privilege deprives the defendant of a fair trial; or, was the witness entitled to remain silent, and was the defendant entitled to claim the testimonial privilege.

■    The right to remain silent must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917). "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). It is for the court to say whether his silence is justified. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) and to require him to answer if it " 'clearly appears to the court that he is

mistaken.' " Hoffman v. United States, *supra*, quoting Temple v. Commonwealth, 75 Va. 892, 899 (1881).

■ The burden on the witness to avoid answering questions for this reason is not a heavy one. He is not required to demonstrate conclusively that the answer to the question would surely subject him to prosecution, nor does he need to demonstrate that the answer to the question is likely to result in his being convicted of some crime. Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955). Nor does he have to disclose the exact hazard feared, United States v. Zwillman, 108 F.2d 802 (2nd Cir. 1940), as this could itself easily lead to incrimination. It is necessary, to sustain the privilege, only that the witness make it evident from the question and its implications, considered in the setting in which it is posed, that the answer, or even an explanation as to why it cannot be answered, might be dangerous, because an injurious disclosure might result. Emspak v. United States, *supra*; Hoffman v. United States, *supra*; Rogers v. United States, *supra*.

■ A review of the circumstances surrounding the witness Williams shows that he could not bear even this slight burden. The court conducted an inquiry of the witness (N.T. 13–16), and concluded that his claim of privilege was mistaken. This was correct since he had already been insulated from any further prosecution arising out of the events about which he was being questioned by virtue of his earlier acquittal. Relator's trial counsel suggested that an answer might leave the witness vulnerable to a charge of being a common gambler; however, a common gambler is one who gambles for his livelihood, or maintains a gambling establishment. The mere act of playing cards for money is not a criminal offense under Pennsylvania law. 18 P.S. § 4603; Commonwealth v. Aversano, 67 Pa.Dist. & Co. 371 (1948).

■ With regard to the second allegation of relator, that the trial judge incorrectly denied Williams his right to exercise the privilege against self-incrimination, relator lacks standing to complain of this ruling. In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), which dealt with Fourth Amendment rights, the Court said that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *Coconspirators and codefendants have been accorded no special standing.*" *Id.* at 171–172, 89 S.Ct. at 965. (Emphasis supplied). In Bryson v. United States, 419 F.2d 695 (D.C. Cir. 1969), a Fifth Amendment case, the court found that Alderman "clearly establishes that notwithstanding any past indications to the contrary, appellant has no standing to complain of any violation of [another's] Fifth Amendment rights." *Id.* at 697–698.

■ There is nothing in the law of Pennsylvania which precludes an accomplice from testifying. The law is that "all persons shall be fully competent witnesses in any criminal proceeding before any tribunal." 19 P.S. § 681. (Exceptions exist which are not relevant here.) Co-indictees are qualified to testify under this rule. Commonwealth v. Farrell, 319 Pa. 441, 181 A. 217 (1935). This is a generally accepted practice, to which Pennsylvania conforms. 2 Wigmore § 580, at 707–710 (3d Ed. 1940); and Washington v. Texas, 388 U.S. 14, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967).

### ORDER

And now, to wit, this 20th day of January, A. D. 1971, it is hereby ordered that relator's petition for a writ of habeas corpus be and the same is denied.

There is no probable cause for appeal. And it is so ordered.