Commonwealth *v.* Betres, Appellant.

Argued April 15, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

A. R. *Cingolani, Jr.,* with him *August T. Costanzo,* and *Cingolani & Cingolani,* for appellant.

*Robert F. Hawk,* First Assistant District Attorney, with him *John H. Brydon,* District Attorney, for Commonwealth, appellee.

Opinion by Cercone, J., December 1, 1975:

This appeal arises from the conviction of Peter Betres on various gambling charges. The relevant facts are as follows. On February 10, 1972, Betres and another individual purchased the land and building owned and occupied by the German Beneficial Society of Lyndora, Pennsylvania. The German Club had been in existence since 1910 and was governed by its own officers. It owned a liquor license and was primarily an "after-hours" social club and drinking establishment. After the purchase Betres and his partner leased back the property to the German Club. Betres often visited the club, became a member and lent his assistance to the club; exactly how much control Betres exerted over the club will be discussed more specifically at a later point.

In early December, 1973, Larry Riley, a Pennsylvania State Police Officer, visited the club for the express purpose of determining if any illegal gambling was taking place. On December 21, 1973, he returned and purchased a membership. He visited the club eight times between December, 1973, and March 10, 1974, often taking a fellow officer with him as a guest. During these visits he saw no hint of gambling.

On March 10, 1974, Officer Riley again visited the club; he was accompanied this time by Officer Shaffer. During this visit Officer Riley engaged in several pool games with Betres upon the outcome of which wagers were made. On the morning of March 17, 1974 at approximately 3:45 A.M. Officers Riley and Shaffer were again at the club standing next to the pool table when Betres stated "Stick around. We're going to shoot dice." Betres then took towels and placed them in the pockets of the pool table and began a game called "over and under." Betres placed two cards on the table; an eight of diamonds on one side and a six of clubs on the other. The idea of the game was to bet that the rolled dice would be either eight or above or six or below. If, for example, one

wished to bet that the rolled dice would be eight or above, the bettor would place a wager on the side of the pool table closest to the eight of diamonds and if, in fact, the dice roll was eight or above, Betres would pay all the persons on the high side the amount of their wagers and take the money from bettors on the low side of the table. If the dice roll resulted in seven, Betres would take all the money on the table. Without the aid of complex mathematical reasoning it can be seen that one person was more likely to win than the others, i.e., the person conducting the game, which in this case was Betres. Officers Riley and Shaffer participated in the over and under game for about an hour and then left.

A week later on March 30, 1974, the German Club was raided by the police, who found no evidence of gambling or gambling paraphernalia at that time. Betres was arrested, tried by a jury, and convicted of violating subsections (a)(2), (a)(3) and (a)(4) of Section 5513 of the Crimes Code.[1] Motions for a new trial and arrest of judgment were argued and denied, and Betres was sentenced to 6 to 12 months imprisonment and fined $1,500.00. Betres now appeals to this court raising several issues.

The first issue which we will consider is whether the lower court should have sustained all or any part of appellant's demurrer to the evidence. Because appellant was convicted of three subsections of Section 5513, each

---

1. The relevant portions of the Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §5513(a)(2), (3) and (4) are as follows:

"(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he: . . .

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling."

of which prohibits a distinct type of behavior, we must examine them individually. Subsection (a) (2) prohibits one from allowing "persons to collect and assemble for the purpose of unlawful gambling at any place under his control."[2] While it is true that Betres was neither an officer nor a director of the German Club, there are several facts which tend to show that Betres did, in fact, exercise control over the German Club. On the night of the raid, March 30, 1974, Officers Riley and Shaffer went to the club before the raid began. Officer Riley's testimony as to what happened at that time is as follows:

> "Trooper Shaffer and I went to the club before the raiding begun. [sic] We walked up to the door. There is a little lookout by the door. Mr. Betres looked out, saw us and said, 'Go away. There's a car in the parking lot. I don't know who it is. There are people sitting in it.' He said, 'Come back when those people leave.' Trooper Shaffer and I turned around and walked back to the road. When we got to the road, the car started up and pulled out. At this time we walked back to the club. Mr. Betres said, 'Who were they?' We said, 'We don't know. It is dark. We couldn't see them.' We went inside the club. We were sitting at the bar and Mr. Betres and the doorman kept a constant lookout through that hole the whole time that Trooper Shaffer and I were in there before the raiding party came."

The fact that Betres could deny entrance to the club is a strong indicator of control. When this is coupled with the testimony of Officers Riley and Shaffer to the effect that, from their observations, Betres was in control of the club, that Betres did run the dice game and that Betres was the owner of the property, we must conclude that there was sufficient evidence upon which the jury could find that Betres was in control.

---

2. *Id.*

Subsection (a) (3) makes it a crime if one "solicits or invites any person to visit any unlawful gambling place for the purpose of gambling."[3] The Commonwealth's evidence as to solicitation is not strong. The only evidence consisted of the following statement made on March 17, 1974, by Betres: "Stick around. We're going to shoot dice." Betres did not solicit or invite anyone to visit the German Club for the purpose of gambling. The persons to whom the statement was addressed were already at the club. Therefore, we must agree with Betres' argument that there was insufficient evidence to convict him as to subsection (a) (3).

Subsection (a) (4) makes it a crime if one "being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling."[4] Betres was the owner of the property which housed the German Club; this was proved by Commonwealth's Exhibit No. 1, the deed which granted to Betres the land and building in question, and he clearly knew of the activity taking place, in that he himself conducted it. The evidence is therefore clearly sufficient to find that Betres was the owner and was in control of the German Club.

The second issue which we will consider is whether Section 5513(a) (2), (a) (3) and (a) (4) is so vague as to be unconstitutional. Appellant's primary objection to the statute is the use of the terms "unlawful gambling" and "unlawful gambling place." Appellant contends that these terms are unclear because gambling in itself is not unlawful in Pennsylvania. See *Commonwealth v. Manuszak*, 155 Pa. Superior Ct. 309 (1944) ; *Commonwealth v. Zotter*, 131 Pa. Superior Ct. 296 (1938) ; *Commonwealth v. Chaitt*, 53 Lan. Rev. 390, aff'd 176 Pa. Superior Ct. 318, 380 Pa. 532, cert. denied, 350 U.S. 829 (1953) ; *Commonwealth v. Aversano*, 67 D. & C. 371 (1948) ; and,

---

3. *Id.*

4. *Id.*

*United States ex rel. Yates v. Rundle,* 326 F. Supp. 344 (1971). While appellant's contention has merit, the issue is not whether gambling in general is legal, but whether the terms "unlawful gambling" and "unlawful gambling place" are so fundamentally vague, in relation to the three situations contemplated by the statute, so as to render this particular statute unconstitutional. Our Supreme Court has given us guidelines to help resolve this type of problem in the case of *Sablosky v. Messner,* 372 Pa. 47, 52-53 (1952)., in which the Court stated: "It is true that where a statute is so vague, indefinite and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete and conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative. . . . But . . . legislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect. . . . An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure the purpose for which it is passed, if common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those entrusted therewith. . . ."[5] (citations omitted).

While the statute in the instant case could be clearer, it is not so vague that we cannot determine what the legislature intended when it used the terms "unlawful gambling" and "unlawful gambling place." The legislature has specifically authorized certain types of gambling such as the state lottery,[6] harness racing,[7] and thorough-

5. These guidelines have been recently applied in *Heller v. Depuy,* 2 Pa. Commonwealth Ct. 196, 211-212 (1971).

6. See Act of August 26, 1971, P.L. 351, No. 91, §1, 72 P.S. §3761-1 et seq.

7. See Act of December 22, 1959, P.L. 1978, §1, as amended, 15 P.S. §2601 et seq.

bred racing.[8] When the term unlawful gambling was used by the legislature they could have intended no other meaning than gambling not specifically authorized by the Commonwealth. This reasonable common sense interpretation is supported by Section 5512 of the Crimes Code.[9] That section which deals with lotteries defines the term "unlawful" as follows, "As used in this section the term 'unlawful' means not specifically authorized by law." There is no reason why the legislature would have intended "unlawful" to have any different meaning in Section 5513 than it was given in Section 5512. Therefore, the term "unlawful," as used in Section 5513, means "not specifically authorized by law." A person who owns or who is in control of an establishment such as contemplated by the statute, and who conducts any type of gambling therein, except, of course, gambling authorized by law, may be prosecuted under this section.

The third issue to be considered concerns certain incorrect statements made by the lower court to the effect that gambling in itself was unlawful. Appellant wanted the lower court to explain that gambling in itself was not against the law so that, if the jury felt that appellant was at the German Club as a patron, rather than as an owner or a person in control, it might acquit him. This argument is irrelevant in that, as was discussed above, appellant was clearly shown to be the owner and in control of the club and, therefore, whether the jury additionally viewed him as a patron was unimportant.

Appellant raises several other issues which do not warrant discussion. Thus, appellant's conviction as to subsections (a)(2) and (a)(4) of Section 5513 is affirmed and his conviction as to subsection (a)(3) is

---

8. See Act of December 11, 1967, P.L. 707, §1, 15 P.S. §2651 et seq.

9. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §5512.

reversed. Because the basis of the sentence is unclear on the record, this case is remanded so a determination can be made as to whether an adjustment in appellant's sentence should be made in light of the reversal of subsection (a)(3).

It is so ordered.