363 A.2d 1271

**COMMONWEALTH of Pennsylvania**

v.

**Ruth D. LANE, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1976.

Decided Sept. 27, 1976.

James B. Wiltse, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Robert L. Campbell, Asst. Dist. Attys., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

In this appeal we must determine whether the evidence was sufficient to support appellant's conviction for operating a lottery.[1] After reviewing the record and the law, we find that the evidence was insufficient and reverse the judgment entered by the court below.

Viewing the evidence presented to the court below [2] in a light most favorable to the Commonwealth, the verdict winner, *Commonwealth v. Coe*, 226 Pa.Super. 594, 323 A.2d 213 (1974), the following facts were established: On January 22, 1973, Detective Charles Moffat of the Pittsburgh Police executed a search warrant for the home of appellant, Ruth Lane. After the detective explained to

1. Act of June 24, 1939, P.L. 872, § 601, 18 P.S. § 4601 (1963). Because the alleged criminal act was committed before the effective date of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 101 *et seq.*, this prosecution was commenced under the prior penal code.

2. Appellant waived her right to a jury trial.

appellant the purpose of the search, she removed from her bra $66.00 in United States currency and also four small packages of what the detective described as "numbers slips." The total monetary value of the numbers slips amounted to $88.15. There was a note in one of the packages of numbers slips which read: "Ruth, here is my money for Saturday and today. That cleans me up with Richard." After introducing the numbers slips into evidence, the Commonwealth rested its case. Appellant failed to present any defense. On the basis of the foregoing evidence, appellant was found guilty as charged and was sentenced to pay a fine of $1,000.00 and undergo an imprisonment of two to six months.

█ The basic elements of a lottery are (1) a prize to be won; (2) a winner to be determined by chance; and (3) the payment of a consideration by the player. *Commonwealth v. Logan,* 172 Pa.Super. 365, 94 A.2d 99 (1953). The type of lottery appellant was accused of operating is commonly known as the "number game". The game is played by a "purchaser" or "player" who selects a certain number and plays an amount of money upon it which is paid to the "writer." The "writer" generally gives to the player a slip of paper or a ticket on which the number is written. The writer then keeps a copy of the slip for himself either separately or in a book. A third copy of the numbers slip usually goes to the "banker" or "backer" who makes the payment to the player if his number wins. Sometimes a "pick-up man" gathers the numbers slips or tickets from the writer and delivers them to the backer. There are various methods for selecting the winning number. The above is only a general description of how the number game operates, but there are, of course, several variations of the basic system. *See Commonwealth v. Chirico,* 117 Pa.Super. 199, 177 A. 591, *allocatur refused,* 117 Pa.Super. *xxvii* (1935); *Commonwealth v. Banks,* 98 Pa.Super. 432 (1930).

■ Although it is not unlawful to merely play the number game, *see Commonwealth v. Bondi*, 217 Pa.Super. 133, 269 A.2d 398 (1970), it is unlawful to be a writer, *see Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A. 2d 710, *allocatur refused*, 198 Pa.Super. *xxix* (1962), a backer, *see Commonwealth v. Chirico*, supra, a pick-up man, *see Commonwealth v. Baker*, 185 Pa.Super. 515, 138 A.2d 177, *allocatur refused*, 185 Pa.Super. *xxvii* (1958), or any other person "concerned in the managing, conducting or carrying on" of any lottery. Act of June 24, 1939, P.L. 872, § 601, 18 P.S. § 4601 (1963). The test is whether the defendant was " '*substantially* engaged in or taking part in' the conducting of a lottery." *Commonwealth v. Bufalini*, 223 Pa.Super. 489, 490 n. 1, 302 A.2d 352, 353 n. 1 (1973) (emphasis original) (citation omitted).

■ We must now review the evidence against appellant. The Commonwealth first argues that from the many numbers slips totalling $88.15 concealed on appellant's person it can be inferred that she was a writer rather than a player. Unfortunately for the Commonwealth, it is not unknown for a player to have that much money or that many bets involved in the game. In *Commonwealth v. Bondi*, supra, the defendant was found to be in possession of a card with 43 bets on it. In spite of the large number of bets, this Court held that without evidence as to whether the card was a writer's card or a player's card, the defendant's conviction for operating a lottery could not be sustained. In the present case, there was simply no evidence as to whether the slips possessed by appellant were those of a writer or those of a player. Normally, the Commonwealth presents testimony of an officer familiar with lottery operations who can give an opinion as to whether the slips possessed were writer's slips. *See Commonwealth v. Polite*, 190 Pa.Super. 329, 154 A.2d 287, *allocatur refused*, 190 Pa.Super. *xxvi* (1959); *Commonwealth v. Adams*, 174 Pa.Super. 504,

102 A.2d 202 (1954). However, the lack of such testimony was fatal in this case.

 The Commonwealth next argues that the note found in the one package of numbers slips which read, "Ruth, here is my money for Saturday and today. That cleans me up with Richard," indicates that appellant, Ruth Lane, is a numbers writer. While it would be possible to interpret such words to mean that appellant was the numbers writer and perhaps Richard was the backer, it would be equally as possible to read the note to mean that Ruth was a friend of the person who wrote the note and was to give the money to Richard, who was the numbers writer. Appellant's role as a mere conduit between a player and a writer on only one occasion would not constitute a "substantial" engagement in the operation of a lottery. *See Commonwealth v. Bufalini,* supra (evidence of one telephone call placing bet with appellant was insufficient to sustain conviction for conducting a lottery). We cannot affirm appellant's guilt beyond a reasonable doubt on the basis of an ambiguous note.

Nor did the Commonwealth present any other evidence to connect appellant with the operation of a lottery. There was no attempt by appellant to destroy evidence or divert suspicion. *See Commonwealth v. Gregory,* 183 Pa. Super. 53, 127 A.2d 788 (1956); *Commonwealth v. Cese,* 176 Pa.Super. 650, 109 A.2d 228 (1954). On the contrary, when told of the purpose of the search, she freely delivered to the officer the numbers slips, the note, and the money. Moreover, a search was conducted of appellant's home, yet no other paraphernalia commonly associated with the operation of a lottery was discovered. *See Commonwealth v. Graham,* 192 Pa.Super. 293, 162 A. 2d 68, *allocatur refused,* 192 Pa.Super. *xxvi* (1960) (adding machine, pads, coin wrappers); *Commonwealth v. Gregory,* supra (books used by a writer); *Commonwealth v. Prezioso,* 157 Pa.Super. 80, 41 A.2d 350, *alloca-*

*tur refused,* 157 Pa.Super. *xxiii* (1945) (books and other materials).

In short, the Commonwealth has failed in its burden of proof. Without the crucial testimony that the numbers slips possessed by appellant were the type held by a writer, it became necessary for the Commonwealth to establish by other evidence that appellant was *substantially* involved in the operation of the lottery. That evidence was not produced.

Judgment reversed and appellant discharged.

PRICE, J., dissents.