458 A.2d 533

**COMMONWEALTH of Pennsylvania**

v.

**Walter FREEMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1982.

Filed March 18, 1983.

---

104

Donald E. Havens, Upper Darby, for appellant.

Helen T. Kane, Assistant District Attorney, Media, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Judgment of Sentence imposed upon appellant, Walter Edward Freeman, for violating 18 Pa.C.S.A. § 5512 (Lotteries, etc.) and 18 Pa.C.S.A. § 5513 (Gambling devices, gambling, etc.)[1] by Judge Melvin G.

---

1. Appellant also was charged with tampering with the evidence (18 Pa.C.S.A. § 4910). However, the trial court sustained appellant's demurrer as to this offense at the close of the Commonwealth's case.

Levy of the Court of Common Pleas of Delaware County. We reverse.

Viewing the evidence presented to the court below in a light most favorable to the Commonwealth, the verdict winner, *Commonwealth v. Coe*, 226 Pa.Super. 594, 323 A.2d 213 (1974), the following facts were established: At approximately 3:00 p.m. on the 12th of November, 1980, Pennsylvania State Trooper Donald L. Fredericks, along with Detective Greg Seltzer and other police personnel, executed a search warrant for the residence of Frank and Delores Miller, located at 1000 Conchester Highway, Chester, Pa. The procedure followed consisted of Trooper Fredericks knocking on the door and announcing his identity and purpose. With this, appellant opened the door and was shown identification by Trooper Fredericks, as well as being told that the police had a search warrant for the residence. Appellant was asked if anyone else was on the premises. He advised Trooper Fredericks that Mrs. Miller, his mother-in-law, was the only other person present and she was sick in bed. This was confirmed by the police. Then, appellant was taken to the living room and was read the content of the warrant while the premises were being searched. At one point during this investigation, Detective Seltzer asked Trooper Fredericks if he would go back to the vehicle to get a box which had a camera and film. After Trooper Fredericks had retrieved the box and was returning to the residence, he "noticed a trashcan located near the garage door of the residence. And there was smoke coming from the trashcan." (N.T. 10) The Trooper, after tipping over the 25 to 50-gallon container, observed "numbers and tallies on sheets of paper." [2] (N.T. 11) There was nothing else in the trashcan, other than the couple of hundred sheets of paper. (N.T. 40) Thereafter, Trooper Fredericks doused the

---

2. "Tally sheets" are paper containing, basically, a summary of letters in code, followed by numbers, which identify the people who write numbers, as compared to those individuals who actually place a bet on a number with the "writer," how much money is owed by the "writer" and/or turned in by him to the head of the numbers organization ("bank"). (N.T. 38, 41–42) "Tally sheets" are kept by the head of the numbers organization; in other words, the "bank." (N.T. 34)

flames with wet towels secured from inside the home and yelled to Detective Seltzer that he had found "evidence outside burning." The contents of the trashcan were placed in a bag by Trooper Fredericks, who, in turn, arrested appellant and Mrs. Miller and gave them their *Miranda* rights.

Next, the police, after having completed their search, were about to leave when Mr. Miller arrived. He was informed of what had transpired. Despite Mr. Miller advising Trooper Fredericks that Mrs. Miller was sick and suffering from a bad back, the Trooper stated that those arrested would be processed at the Pennsylvania State Police barracks and later arraigned. At this time, appellant admitted to Trooper Fredericks that, as for the evidence seized, he had "placed it in a trashcan and set it on fire." (N.T. 30) As a result of this admission, only appellant was transported to the police station and charged with the commission of various offenses involved with the operation of a lottery and gambling devices. *See* note 1, *supra.*

Following a preliminary hearing, appellant was held over for court. Thereafter, appellant's suppression motion was denied and trial, without a jury, was conducted. After the entry of a guilty verdict, post-trial motions were denied and appellant was sentenced. This appeal followed.

The appellant asserts that the lower court erred: 1) in not suppressing his inculpatory statement; 2) in admitting the inculpatory statement into evidence without first having the prosecution establish the *corpus delicti* of the offenses; 3) in failing to sustain his counsel's demurrer to the charges; and 4) in imposing a sentence of total confinement.

As for appellant's argument regarding the suppressability of an inculpatory remark, we need first to review the circumstances attendant to his warrantless arrest.

An examination of the 16-page search warrant and receipt/inventory sheet nowhere reveals appellant's name. For example, in that portion of the warrant requesting the "Name of owner, occupant or possessor of said premises to

be searched . . . ," there appears the appellation: "Frank H. Miller, Delores Miller, Patricia nee [sic] Miller Fontaine, Otto Fontaine." The probable cause section is no more illuminating, for that portion of the warrant only gives an accounting of "an investigation into the Frank Miller gambling organization for a period expanding over two years." Although the affiants meticulously list the dates that the Miller's phone was wiretapped, and in some cases the content of the conversations and names of those participating therein, appellant's name does not appear anywhere in the warrant. Also, during the 2-year period that Frank Miller was being investigated and his residence placed under surveillance, appellant was not mentioned among those associating with the Miller organization. Thus, given the state of the officers' knowledge of the case at the time the warrant was executed, it is not unusual to find the Assistant District Attorney stating, during his recitation of the facts at the suppression hearing, that:

> "The defendant, Freeman, was never considered to be a target of the search. He is not listed on the search warrant or named at any point during the affidavit of probable cause. *It was a surprise [to] the police to find the defendant on the premises.*" (Emphasis added) (Suppression Hearing 2/23/81 at 6–7)

With the warrant in hand, Trooper Fredericks secured entry into the Miller home and was told by appellant that he and Mrs. Miller, who was sick in bed, were the only persons on the premises. The two were then escorted into the living room and had the warrant read to them. While the search was being conducted inside, Trooper Fredericks retrieved a camera from his vehicle and, on his way back, observed smoke coming from a trashcan located near the driveway. Initially, Trooper Fredericks did not see the receptacle because it was near a truck parked in the driveway and it was situated approximately 40 feet from the entrance to the house.

After the Trooper extinguished the fire in the trashcan, he noticed that its contents consisted solely of numbers and

tallies on sheets of paper. Thereafter, he confiscated the evidence and arrested appellant and Mrs. Miller. The two were then given their *Miranda* rights. When Mr. Miller arrived and was unable to dissuade the police from arresting his wife, appellant, without any prompting, stated that he had removed the "tally sheets" from his automobile and placed them in the barrel in an attempt to destroy the evidence.

In light of the preceding, appellant contends that there was an absence of probable cause to justify his warrantless arrest. To evaluate the propriety of such a position, we need first to examine the provisions appellant was charged with violating; to-wit, subsection (b)(1) & (2) of Section 5512, which reads:

"**(b) Offense defined.**—A person is guilty of a misdemeanor of the first degree if he:

(1) sets up, or maintains, any lottery or numbers game;

(2) manufactures or prints, or sells, exposes for sale or has in his possession with intent to sell any unlawful lottery or numbers ticket or share, or any writing, token or other device purporting or intending to entitle the holder or bearer, or any other person, to any prize to be drawn or obtained in any lottery, or numbers game;"

18 Pa.C.S.A. § 5512(b)(1) & (2).

Thus, based on the aforesaid, the establishment of appellant's *guilt* for violating the lotteries statute is premised upon the determination of whether he was either "maintain[ing]" such an operation or was in "possession" of "any writing" entitling a person to a prize to be drawn or obtained in any lottery. *See Commonwealth v. Adams,* 174 Pa.Super. 504, 508, 102 A.2d 202, 203 (1954) (" 'It is not necessary for conviction that there be evidence of the actual operation of a lottery. * * * It is sufficient if the defendant be found in possession of the paraphernalia necessary for operation' "). However, it must be kept in mind that:

"There is a clear distinction between what is required for purposes of establishing probable cause for a warrantless

arrest or search and what is required for proving guilt. 'The arresting officer need not have had in hand evidence which would suffice to convict', *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), as it is only the probability, and not a prima facie showing of criminal activity that is the standard for justifying arrest. *Commonwealth v. Murray,* 437 Pa. 326, 263 A.2d 886 (1970). The probable cause necessary to support an arrest '... cannot demand the same strictness of proof as the accused's guilt upon a trial ....' *Commonwealth v. Bosurgi,* [411 Pa. 56, 190 A.2d 304 (1963)].

       *    *    *    *    *    *

Sufficiency of evidence to establish guilt must not be confused with the lesser standard necessary to support the legality of an arrest. *Commonwealth v. Bosurgi, supra."* *Commonwealth v. Anderson,* 224 Pa.Super. 19, 24, 302 A.2d 504, 506 (1973).

Consequently, " '[i]f an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed *on the suspect's property,* he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him.' " (Citation omitted) (Emphasis added) *Commonwealth v. Calvarese,* 199 Pa.Super. 319, 322, 185 A.2d 657, 659 (1962).

Having set forth some of the guidelines to assist us in assessing the conduct of the police in the context of an arrest, we now turn our attention to a review of the legitimacy of such an action where no warrant has been secured. In this Commonwealth:

"A police officer may make an arrest for a misdemeanor committed in his presence (the possession of numbers paraphernalia) without a warrant: *United States v. Murphy,* 3 Cir., 290 F.2d 573, 575. In that case the Court said: 'The Court made it clear in *Carroll v. United States,* 1925, 267 U.S. 132, 156–157, 45 S.Ct. 280 [286], 69 L.Ed. 543, that an officer can make an arrest without

first securing a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence. Probable cause does not require, as the Supreme Court has so frequently said, that the arresting officers have evidence to establish criminal guilt. *Brinegar v. United States*, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. *On the other hand, a mere inkling or suspicion is not enough. United States v. Walker*, 7 Cir., 1957, 246 F.2d 519. "Probable cause," Justice Douglas said in *Henry v. United States*, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." ' " (Emphasis added) *Commonwealth v. Calvarese, supra*, 199 Pa.Super. at 324, 185 A.2d at 659–660. *Accord Commonwealth v. Laniewski*, 427 Pa. 455, 235 A.2d 136 (1967); *Commonwealth v. Garrick*, 210 Pa.Super. 124, 232 A.2d 8 (1967); *Commonwealth v. Adams, supra.*

Instantly, we need to determine if the evidence confronting the arresting officer was of sufficient quantity and quality to cause him—a prudent man—to believe that appellant was either "maintaining" a lottery or in "possession" of lottery paraphernalia so as to constitute a violation of 18 Pa.C.S.A. § 5512.

To begin with, the search and subsequent seizure complained of were the culmination of a 2-year investigation of the *Frank Miller organization.* The warrant, albeit not listing the appellant's name anywhere therein, set forth, *inter alia*, the following items to be seized: "Slips of illegal lottery plays, ... Tote sheets, charts of illegal number plays and gambling paraphenalia [sic] ...." Also, the police conducted no surveillance of the premises prior to the search which implicated the appellant in some sort of surreptitious or nefarious activity. In fact, as stated by the Assistant District Attorney at the suppression hearing, the police were "surprise[d]" to see the appellant answer the door to let them in. Thereafter, appellant informed the police that he and his mother-in-law were the only occu-

pants. Following this, Trooper Fredericks, while retrieving something from his vehicle, found "a couple of hundred sheets of paper" burning in a trashcan, which upon closer scrutiny proved to be "tally sheets" customarily associated with a "numbers bank."[3] Immediately after the seizure of the evidence, the police arrested appellant and his mother-in-law for violating the lottery statute.

In determining if Trooper Fredericks had sufficient information to make an arrest for a misdemeanor committed in his presence without a warrant, we need to decide if appellant was in "possession" of the lottery paraphernalia. In making this evaluation, we look for guidance from drug cases. Since no one saw the appellant in actual possession of the "tally sheets," the Commonwealth was required to show that the defendant had constructive possession, i.e., "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Luddy*, 281 Pa. Super. 541, 547, 422 A.2d 601, 604 (1980). On this exact point, this Court has unequivocally stated:

"Although constructive possession may be inferred from the totality of the circumstances, mere presence, or residence at the scene, is insufficient to prove a conscious dominion over the contraband. 'Undoubtedly, the fact of possession loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered[.]'" (Citations omitted) *Commonwealth v. Macolino*, 302 Pa.Super. 96, 98, 448 A.2d 543, 545 (1982). *Accord Commonwealth v. Keblitis*, 500 Pa. 321, 324, 456 A.2d 149, 151 (1983) ("Appellant's mere presence in the garden of a residence not proven to be his own, under circumstances rendering it clear that the marihuana plants therein were equally accessible to be grown by *at least* three other persons, to wit the three codefendants, is insufficient to establish

---

**3.** Trooper Fredericks' opinion as to the content and meaning of such evidence was based on his views as an expert in the field, which was not challenged at trial. *See Commonwealth v. Lane*, 242 Pa.Super. 283, 363 A.2d 1271 (1976); *Commonwealth v. Polite*, 190 Pa.Super. 329, 154 A.2d 287 (1959).

guilt [for the manufacture of marihuana by growing, 35 P.S. § 780–113(a)(30) (1977),] beyond a reasonable doubt." (Emphasis in original)).

■ In the case at bar, the only evidence of (constructive) possession was the Trooper's testimony that the contraband was found burning in a trashcan 20-feet from the garage, and some 40-feet from the entrance to the house. While the appellant was present at the scene, we have oft-stated that such evidence alone does not present probable cause to arrest. *See Commonwealth v. Keblitis, supra; Commonwealth v. Anderson, supra; see also Commonwealth v. Moore,* 180 Pa.Super. 538, 541, 118 A.2d 212, 213 (1955) ("Mere presence, in a numbers headquarters also frequented by players does not support a conviction."). Although "exclusive control over the contents of a residence may properly be inferred from a showing that the accused is the only occupant or tenant of that residence[,]" *Commonwealth v. Stamps,* 493 Pa. 530, 539, 427 A.2d 141, 145 (1981), such was not the case here. Mrs. Miller was also on the premises. *See Commonwealth v. Nardello,* 197 Pa.Super. 165, 177 A.2d 166 (1962) (while the defendant did not appear to own the premises, he was alone in the house except for a domestic when the *police found appellant sitting on a bed with sixty-seven slips containing horse plays and number bets* ). The mere statement by the appellant that his mother-in-law was sick and in bed is not conclusive of her inability to have had access to the "tally sheets." In fact, the police did not consider Mrs. Miller so incapacitated that they were willing to refrain from transporting her to the station house and then arraigning her.

■ To reiterate, our review of the facts indicates that appellant was not the owner of the dwelling, nor were there any leases, utility and telephone bills, rent receipts or other indicia that he was other than a visitor with Mrs. Miller. *See Commonwealth .v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971); *Commonwealth v. Fiorini,* 202 Pa.Super. 88, 195 A.2d 119 (1963); *Commonwealth v. Fisher,* 166 Pa.Super. 245, 70 A.2d 372 (1950). In other words, "nothing was

evident to associate defendant with the incident except his presence on the [premises] ... [20] or more [feet] away from the [trashcan, located outside the house near the garage]." *Commonwealth v. Pincavitch,* 206 Pa.Super. 539, 543, 214 A.2d 280, 282 (1965); *see Commonwealth v. Marino,* 142 Pa.Super. 327, 16 A.2d 314 (1940) and *compare Commonwealth v. Calvarese, supra; Commonwealth v. Mattera,* 151 Pa.Super. 135, 30 A.2d 168 (1943). Also, persons (Mrs. Miller) other than the accused had equal access with him to the area in which the property was discovered. *Commonwealth v. Keblitis, supra;* 9 Wigmore on Evidence § 2513 (3rd Ed.). Thus, "[i]t was [not] reasonable [for the police to] conclu[de] that a misdemeanor was then and there being committed in their presence." *Commonwealth v. Calvarese, supra,* 199 Pa.Super. at 319, 185 A.2d at 657. Given the paucity of evidence found on the premises by the police prior to the "tally sheets" being discovered, the more logical and acceptable procedure would have been for the authorities to maintain the status quo until they could have questioned those present regarding what they had found or, at least, "so that the identification and purpose of those present could be ascertained and verified." (Citations omitted) (Footnote omitted) *Commonwealth v. Dennis,* 289 Pa.Super. 305, 312, 433 A.2d 79, 82 (1981). Absent such conduct, we conclude that the police had insufficient evidence at the moment of the arrest to validate their actions.[4]

---

**4.** This is not altered by the Commonwealth's assertion that, inasmuch as the "tally sheets" had not yet been consumed by the flames when the police discovered them, it is reasonable to infer that the fire was of recent origin. (Commonwealth's Brief at 9) As a result, it was not improbable for Trooper Fredericks to infer from such evidence that appellant was just as culpable of attempting to destroy the evidence as Mrs. Miller. It is true that such efforts at concealment have been considered in other lottery convictions. *See Commonwealth v. Gregory,* 183 Pa.Super. 53, 127 A.2d 788 (1956); *Commonwealth v. Cese,* 176 Pa.Super. 650, 109 A.2d 228 (1954). "In all those cases, however, there was additional evidence, such as phone calls from bettors, gambling paraphernalia or money representing bets and the concealment was considered along with such evidence, all of which is absent here." *Commonwealth v. Bondi,* 217 Pa.Super. 133, 137, 269 A.2d 398, 400 (1970).

■ Moreover, "[u]nder these circumstances, the basis of the Commonwealth's case was the legal theory of constructive or joint possession. The Commonwealth attempted to prove this by proof of the appellant [and Mrs. Miller] at the scene, opportunity to commit or join in the possession or control of the ["tally sheets"], guilt by association, and suspicion or conjecture." *Commonwealth v. Tirpak*, 441 Pa. 534, 537, 272 A.2d 476, 478 (1971). Under the particular facts and circumstances of this case, this is not sufficient to prove beyond a reasonable doubt that appellant was guilty of the lottery offense (possession). *See Commonwealth v. Saeli*, 146 Pa.Super. 555, 22 A.2d 597 (1941); *Commonwealth v. Marino*, 142 Pa.Super. 327, 16 A.2d 314 (1940); *see generally Commonwealth v. Keblitis, supra.*

■ Having determined that the Commonwealth failed to establish that appellant was in "possession" of lottery items, it would be inconsistent to hold that appellant was guilty, under subsection (b)(1) of Section 5512, of "setting up" or "maintaining" a lottery. *See Commonwealth v. Fiorini, supra*, 202 Pa.Super. at 98, 195 A.2d at 124 ("It is not necessary for conviction of unlawfully managing a lottery that there be evidence of the actual operation of the lottery, but the evidence is sufficient for conviction if the defendant is found in possession of the paraphernalia necessary for such operation. *Commonwealth v. Fisher*, 192 Pa.Super. 288, 161 A.2d 903 [ (1960) ]."); *see also Commonwealth v. Rose*, 257 Pa.Super. 514, 390 A.2d 1356 (1978) (possession of gambling devices, per se, is not tantamount to "maintaining"). To elaborate, an examination of the receipt/inventory sheet attached to the search warrant dis-

Under the Commonwealth's argument, if, parenthetically speaking, 20 people were on the Miller's premises at the time the "tally sheets" were found, the police would have been justified in arresting all those at the scene for violating the lottery statute (possession). We do not countenance such guilt by association as a means to an end, i.e., arresting and prosecuting those suspected of committing a crime. *See Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971). Even in arson cases, the amount of circumstantial evidence tolerated to establish one's guilt exceeds that which was presented here. *See, e.g., Commonwealth v. Nasuti*, 385 Pa. 436, 123 A.2d 435 (1956).

closes no more than the securement of miscellaneous items (letters addressed to the Millers, phone bills and two shotguns), none of which supplemented what the authorities had seized from the trashcan. Stated differently, the police failed to secure "any tools or boards" indicative of a lottery operation. (N.T. 50) *Compare Commonwealth v. Laniewski, supra; Commonwealth v. Bufalini,* 223 Pa.Super. 489, 302 A.2d 352 (1973); *Commonwealth v. Fiorini, supra; Commonwealth v. Oxman,* 173 Pa.Super. 482, 98 A.2d 424 (1953); *Commonwealth v. Hall,* 173 Pa.Super. 285, 98 A.2d 386 (1953); *Commonwealth v. Prezioso,* 157 Pa.Super. 80, 41 A.2d 350 (1945); *Commonwealth v. Wade,* 156 Pa.Super. 88, 39 A.2d 460 (1944). It is to be noted that despite the fact that the police were on the premises for approximately two hours and conducted an exhaustive search of the premises, the only evidence of appellant's role in conducting a lottery was the "tally sheets." Since we have concluded that appellant was not in "possession" of such evidence, the total absence of any other evidence indicating the operation of a lottery leads to the conclusion that the evidence was not of such volume or quality as to overcome the presumption of appellant's innocence and establish his guilt beyond a reasonable doubt. *See Commonwealth v. Bufalini, supra.*

■ We seriously question whether, assuming for the sake of argument, appellant's "possession" of the "tally sheets" on only one occasion would constitute "maintain[ing]" a lottery or numbers game. 18 Pa.C.S.A. § 5512(b)(1). Maintaining is defined, in the context of a statute prohibiting maintenance of a liquor nuisance, as "denot[ing] continuous or recurrent acts approaching permanence." Black's Law Dictionary at 859 (5th Ed.1979). Keeping this in mind, we find that what was stated by this Court in *Commonwealth v. Lane,* 242 Pa.Super. 283, 288, 363 A.2d 1271, 1273 (1976) to be apposite here. That is, "Appellant's role as a mere conduit between a player and a writer on only one occasion would not constitute a 'substantial' engagement in the operation of a lottery." (Citation

omitted) Likewise, instantly, we do not subscribe to the view that appellant's "possession" of lottery paraphernalia on just one occasion would be the equivalent of a "continuous or recurrent act" evincing the "maintain[ing]" of a lottery or numbers game.

In light of our holding in the first portion of this Opinion, we cannot sustain appellant's conviction under 18 Pa.C.S.A. § 5513. Since contravention of Section 5513, as is applicable to the case *sub judice*,[5] required the Commonwealth to establish beyond a reasonable doubt that appellant "set[ ] up [or] maintain[ed] ... any device to be used for gambling purposes," our determination *supra* that appellant was neither in "possession" of lottery paraphernalia nor "maintaining" a lottery renders his conviction under the statute untenable. *See Commonwealth v. Rose, supra* (warranted search of appellant's vehicle produced cases of lottery tickets, punch boards, price lists and a notebook with locations, by name, address and phone number in the vicinity of his arrest; albeit evidence was sufficient to prove a violation of Section 5512(b)(2), court held that judgment of sentence as to *maintaining* a punch board (Section 5513(a)(1)) was not

5. Although the Commonwealth, in the Criminal Information at No. 6142B of 1980, charged appellant with violating subsection (a) paragraphs (1), (2), (3) and (4) of Section 5513, our perusal of the evidence fails even to hint at the presentation of sufficient facts to establish a violation of any of the paragraphs under subsection (a), save for (1). *See Commonwealth v. Betres*, 237 Pa.Super. 361, 352 A.2d 495 (1975). The relevant provisions of Section 5513 read:
"§ 5513. Gambling devices, gambling, etc.
(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he:
(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;
(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;
(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or
(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling."
18 Pa.C.S.A. § 5513.

proven); *see generally Commonwealth v. Runkle,* 287 Pa.Super. 422, 430 A.2d 676 (1981).

■ Additionally, having concluded that appellant's warrantless arrest was improper under the particular circumstances of this case, the other evidence (inculpatory statement) was "come at by the exploitation of that illegality" and hence may not be used against Freeman. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Such a determination by this Court dispenses with the need to address appellant's remaining issues.

Judgment of sentence reversed and appellant is ordered discharged.