## Commonwealth v. Sestina

*George N. Daghir,* for defendant.
*Richard A. Herran, district attorney,* for the commonwealth.

WOLFE, *J.,* October 20, 1987—Defendant was jury-convicted on June 17, 1987, on one count of operating a motor vehicle while his blood alcohol content was .10 percent or greater under section 3731(a)(4) of the Motor Vehicle Code and one count of violation of section 3745(a) of the Motor Vehicle Code, being involved in an accident doing damage to unattended property.

Defendant filed timely post-trial motions for new trial and/or in arrest of judgment which were denied on August 6, 1987.

On September 4, 1987, imposition of sentence was imposed on defendant to pay a fine of $300 and stand committed to the Warren County Prison for a minimum period of 48 hours to a maximum period of six months. The sentence imposition was deferred pending defendant's appeal results.

Defendant's pretrial motion for suppression which was denied and his post-trial motions are bottomed in two arguments, (1) lack of jurisdiction of the arresting officer and (2) lack of corpus delicti.

## FACTS

The facts leading to defendant's arrest are not in dispute. On November 13, 1986, at approximately 2:21 a.m. the arresting officer, James R. Leichtenberger, of the Warren Borough Police Department, was dispatched to a traffic accident at or near the intersection of Conewango Avenue and Quaker Hill Road in Warren. Upon his arrival the officer observed a damaged speed-limit sign, a severely damaged U.S. mailbox and a utility pole leaning and broken several feet above the ground. An individual whose residence was near the scene of the damage advised the officer a vehicle was responsible for the damage and had left prior to the officer's arrival and described the vehicle as a gray sedan.

The arresting officer and his companion located a damaged blue and gray Chrysler vehicle parked in front of apartment number J-2 at 1284 Conewango Avenue, which is in Conewango Township, Warren County, and through the police dispatcher learned the vehicle was registered in the name of defendant. Thereupon, the arresting officer telephoned defen-

dant at his apartment and asked him to come to the vehicle, which defendant did; and upon arrival the officer, smelling alcoholic beverages on defendant, made inquiry if he were involved in the accident on Conewango Avenue near Quaker Hill Road, which defendant acknowledged, and further inquired if defendant had been consuming alcoholic beverages to which defendant replied in the affirmative being about a six-pack of beer. Defendant was asked if he had consumed anything alcoholic since arriving at his apartment. The response was no, and the officer then gave defendant his Miranda rights, requested defendant to submit to a blood-alcohol extraction test, to which defendant consented; and the testing resulted in .19 percent blood-alcohol content.

Defendant raised no pretrial issues of accusatory interrogation prior to Mirandizing.

## JURISDICTION

Defendant argues because the arrest of defendant was perfected outside of the borough of Warren, to-wit, Conewango Township, by a Warren borough police officer investigating a vehicle accident occurring in Warren borough, the arrest is void because the consent given by the commissioner of the Pennsylvania State Police, as published in "The Pennsylvania Bulletin," vol. 13, no. 8, Saturday, February 19, 1983, did not satisfy the requirements of the act of June 15, 1982, P.L. 512 (42 Pa.C.S. §8953[a][4]) which requires the consent be given by the "chief law enforcement officer," which in this case, by definition, (section 8951) is the commanding officer of the Pennsylvania State Police installation which regularly provides primary police service to the political subdivision.

In short, defendant argues the commissioner of the Pennsylvania State Police had no authority to

preempt the authority of the commanding officer of the Warren barracks to give consent to the Warren borough police to perfect an arrest in the state police primary jurisdiction. The argument is this consent must, by definition, come from the sergeant of the barracks that has the duty and authority to patrol municipalities in Warren County other than Warren borough, or if not from the sergeant at a minimum from the Pennsylvania State Police Command at Erie which encompasses within its jurisdiction Warren County.

Section 8951 defines "chief law enforcement officer" in the following manner:

"The head of a duly constituted municipal law enforcement agency which regularly provides primary police services to a political subdivision or, in the absence of any such municipal law enforcement agency, the commanding officer of the Pennsylvania State Police installation which regularly provides primary police services to the political subdivision."

Section 8953(a) provides, in addressing statewide municipal police jurisdiction, as the general rule:

"Any duly employed municipal municipal police officer who is within this commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . .

"(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides

primary police services to a political subdivision which is beyond the officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction."

Daniel F. Dunn, commissioner of the Pennsylvania State Police, gave notice, effective immediately, February 18, 1983, for the purpose of Act 141 of 1982, 42 Pa.C.S. §8951-8954, that:

"The commissioner of the Pennsylvania State Police, as the head and executive officer of said organization, declares on behalf of all commanding officers. of state police installations, which regularly provide primary police services to political subdivisions, that the consent required by section 8953(a)(4) of Act 141, 42 Pa.C.S. §8953(a)(4), is hereby given to municipal police officers to enter the political subdivisions for which the state police provides primary police services, for the purpose of conducting official duties which arise from official matters within the municipal police officer's primary jurisdiction.

"The commissioner also declares, on behalf of all commanding officers of state police installations, which regularly provide primary police services to political subdivisions, that the authority to give the specific consent, required by section 8953(a)(1) of Act 141, 42 Pa.C.S. §8953(a)(1), for a municipal police officer to serve an arrest or search warrant in a political subdivision for which the state police provides primary police services, shall exist with the officer-in-charge of the installation at the time the request is made."

The commonwealth agrees the sergeant at the state police barracks in Warren County did not give any consent to the arresting officer, James Leichtenberger, nor did his command station at

Erie, and therefore relies on the consent by the Pennsylvania State Police Commissioner.

We have found no precedent for guidance on this narrow issue and interpretation; however, in our opinion logic dictates the commonwealth's argument is sound.

Defendant relies on the narrow interpretation that the consent given to nonjurisdictional arresting officers must flow from the "commanding officer of the Pennsylvania State Police *installation* which regularly provides primary police services to the political subdivision, meaning the State Police sergeant in charge of the state police, Warren County Station." (emphasis added). This argument must fall in light of section 8953 Statewide Municipal Police Jurisdiction, section(a)(4) which authorizes a municipal police officer, otherwise without jurisdiction, to enforce the law in those cases where the prior consent of the *"chief law enforcement officer"* or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction. (emphasis added).

The definitions section of section 8951 cannot control section 8953 in the manner in which defendant argues. We agree the commanding officer of a Pennsylvania State Police installation has the authority to give a municipal police officer having other than statewide jurisdiction to enforce the law, but this does not limit the authority of the commisisoner of the Pennsylvania State Police in preempting the commanding officer's authority to give the consent. If this were not so, it is apparent

there would be a patchwork of authority and nonauthority throughout the commonwealth. For whatever reason if the commanding officer of a particular station decided to withold consent to a municipal officer to enforce the law outside of the jurisdiction, this would effectively permit the sergeant of the station to control the duty of the Pennsylvania State Police Commissioner to enforce the law statewide. Here, Commissioner Daniel F. Dunn is the chief law enforcement officer of the commonwealth of Pennsylvania and the Pennsylvania State Police provides primary services to political subdivisions other than in those municipalities that have their own police force such as Warren Borough and particularly the Pennsylvania State Police have primary jurisdiction over the municipalities of Warren County that have no primary police force.

In this military milieu, the commanding officer of a particular Pennsylvania State Police installation may have his authority exercised for him by the Pennsylvania State Police Commissioner who is the chief law enforcement officer of the commonwealth.

## CORPUS DELICTI

Defendant's argument for a defense, that the commonwealth failed to establish the corpus delicti independent of the incriminating statements made by defendant at the time of his arrest is misplaced. Proving corpus delicti simply means presenting evidence that the crime charged has been committed by someone, and corpus delicti is established by evidence a specific injury or loss occurred and was the result of someone's criminality.

In *Commonwealth v. DuHadway,* 175 Pa. Super. 201, 103 A.2d 489 (1954) the court held:

"Proving the corpus delicti simply means showing that the crime charged has been committed by someone. *Commonwealth v. Adams,* 174 Pa. Super. 504, 102 A.2d 202 (1954). This must be done before a confession may be received. *Commonwealth v. Gardner,* 282 Pa. 458, 128 Atl. 87 (1925). It is accomplished by proving (1) a specific injury or loss, (2) some person's criminality as the source thereof. *Commonwealth v. Dolph,* 164 Pa. Super. 415, 65 A.2d 253 (1949). The corpus delicti may be shown by circumstantial evidence, but it must be proved beyond a reasonable doubt." *Commonwealth v. Winter,* 174 Pa. Super. 35, 98 A.2d 221 (1953).

Defendant's argument that his arrest is invalid because the officer had reason to conclude a crime has been committed by defendant is without merit. It is at the time of trial the commonwealth must prove beyond a reasonable doubt a crime was committed before a defendant's confession to the crime may be submitted to the jury. Corpus delicti has no bearing upon probable cause to perfect an arrest.

Next, defendant argues we erred in refusing to permit corroborating testimony as to the amount of alcohol consumed by him. Defendant admitted his consumption of approximately a six-pack and the commonwealth did not dispute this in any degree, and therefore corroborating testimony from defendant to support the fact that he consumed almost a six-pack is unnecessary and adds no weight to the defense.

Finally, defendant argues the verdict was against the weight of the evidence in that there was no evidence translating the .194 blood-alcohol content reading at approximately 3:30 a.m. into the blood-alcohol level of defendant at the time of the accident at approximately 2:21 a.m. Again, there is no merit to this argument in that the blood-alcohol content

was taken at a later time, and any result thereof would be to the advantage of defendant.

For the foregoing reasons we enter the following

## ORDER

And now, this October 20, 1987, defendant's post-trial motions are denied.